## DEW et al. v. MASSACHUSETTS BOND-ING & INS. CO. et al.

### No. 1893.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1938.

Ellis & Ellis, of Covington, for appellants.

St. Clair Adams & Son, of New Orleans, and C. Sidney Frederick, of Covington, for appellee.

LE BLANC, Judge.

The plaintiffs herein, Elizabeth Lockett, wife of Edward Dew, and the said Edward Dew, have instituted this suit to recover damages in the total sum of $14,060 for the death of their daughter, Maggie Dew, a young colored woman, twenty-three years old, who sustained injuries in an automobile accident near Salt Bayou, about 5 miles south of Slidell in the parish of St. Tammany, at about five o'clock of the afternoon of August 27, 1936, and from which she died on September 1, following.

There were three motor vehicles alleged to have been involved in the accident. One, a truck with trailer attached, loaded with twenty bales of cotton, belonging to Stevens Reliable Express, Inc., and being operated at the time by an employee of that company, one Hewey Johnson; another, a truck belonging to Consolidated Parcels, Inc., operated under some form of contract by L. Feibleman Co., Inc., and used as a delivery truck for its country trade, and a Lincoln Zephyr automobile owned and being driven at the time by Alfred S. Wolfe, Commander in the United States Navy, and occupied also by the deceased girl, Maggie Dew. For the sake of brevity the Stevens Reliable Express, Inc., truck will be referred to herein as the cotton truck, the Consolidated Parcels, Inc., truck as the Feibleman truck, and the Wolfe automobile as the Lincoln car. In the accident, Commander Wolfe was killed instantly and the negro girl suffered a fracture of the skull with cerebral injury from which, as already indicated, she died five days later.

The Feibleman truck was being driven at the time of the accident by one Hunter C. France, who is alleged to have been acting at the time within the scope of his employment and on his master's business. This truck was insured against public liability by the Massachusetts Bonding and Insurance Company.

The plaintiffs allege in their petition that on the afternoon of the accident the two

trucks were traveling south in the direction of New Orleans and that Commander Wolfe was driving his car north in the direction of Mandeville. They aver that Route 90 on which the accident occurred which is paved on both sides of the Salt Bayou Bridge with a concrete slab 18 feet wide and has dirt shoulders on each side about 6 feet in width, runs straight for a distance of 460.5 feet from the north end of the said bridge and then forms a sweeping right curve for a distance of about 600 feet. They allege that when the two trucks were in the northern portion of the curve just referred to, the driver of the Feibleman truck who was trailing, recklessly speeded up and began to pass ahead of the cotton truck and trailer in the said curve, in direct violation of the State Highway Regulatory Act and of the ordinary rules of common sense, and that as the two trucks proceeded to swing around the curve, the one attempting to pass the other, both lanes of travel on the concrete slab were blocked to the oncoming Lincoln car which was forced off of the concrete and on to the shoulder on the east side thereof. They aver further that the Feibleman truck, which had accelerated its speed, cut sharply in front of the cotton truck, also forcing part of that truck off the concrete on to the west shoulder of the highway, and that with both the Lincoln car and the cotton truck partly off the concrete slab, the Feibleman truck was enabled to slip through the gap thus created. In the meantime, it is averred, Commander Wolfe, who had lost control of his car when it left the concrete slab, swayed back into the road and crashed into the trailer of the cotton truck, upsetting the trailer and causing his car to go into the ditch on the left side of the highway.

The accident and consequent death of their daughter is charged to the careless, heedless and negligent act of the driver of the Feibleman truck, Hunter C. France, in creating the emergency which has just been described, and he, as well as his employer Consolidated Parcels Inc., and/or L. Feibleman Co. Inc., and also the Massachusetts Bonding and Insurance Company are all made defendants, and judgment is prayed for against them all individually and in solido.

The defendants all filed a joint answer in which it is admitted that Hunter C. France was operating a truck belonging to the Consolidated Parcels, Inc., and that he was so operating it under his employment by L. Feibleman, Inc., throughout the day of August 27, 1936, but they specifically deny that that truck or any other truck owned by the Consolidated Parcels, Inc., was in any manner involved in the accident described in the plaintiffs' petition. They admitted that while driving the truck he was operating, he passed a truck and trailer loaded with cotton in the north portion of the curve as described by plaintiffs but denied specifically that he was in any way negligent or that he violated any law or rule of the road. They also deny that the Lincoln car was in the immediate vicinity of the accident at the time he did overtake and pass the cotton truck. The defendants further aver that they are not called on to explain the exact cause of the collision between the Lincoln car and the cotton truck but they do allege that one of the causes which directly and proximately contributed thereto was the terrific rate of speed at which Commander Wolfe was driving, especially in view of the fact that the accident happened in a curve and that he collided with the trailer of the cotton truck which was on his left or wrong hand side of the road. In the alternative they plead that in the event it should be found that any of them were in any way guilty of any negligence which proximately contributed to the accident, plaintiffs are barred from recovery by reason of the contributory negligence of their deceased daughter in having failed to protest against the manner and method in which Commander Wolfe was driving the car in which she was a passenger. In a further alternative they plead, in the event any of them should be held liable in damages, that the plaintiffs herein have had a settlement of the damages which they claim herein with the insurers of Commander Wolfe and Stevens Motor Express, Inc., to whom they had given a release and have therefore received full payment for any damages sustained by them.

After trial and submission, the district judge took the case under advisement and later rendered judgment rejecting the demand of the plaintiffs at their costs. From this judgment, plaintiffs have taken this appeal.

The district judge assigned written reasons for judgment which are filed in the record and from which it appears that he found the evidence, although of a conflicting nature, established the fact that the Fei-

bleman truck had gone at least 100 feet past the cotton truck at the time the Lincoln car collided with the trailer of that truck and that it was not usurping the left lane of travel on the highway and creating such an emergency as to cause a collision between those two vehicles. He held that the testimony also showed that the Lincoln car was traveling at a rate of speed of at least 80 miles per hour, which was wantonly reckless and in utter disregard of the driver's own safety as well as that of others using the public highway. Whilst he does not specifically attribute the accident to the speed of the Lincoln car, which he refers to as constituting the grossest sort of negligence, he concludes by stating that the plaintiffs have failed to establish by a preponderance of evidence the facts set out in their petition and on which they relied in order to prove negligence on the part of the driver of the Feibleman truck and resulting liability on the part of his employers.

Counsel realize full well that on appeal, in order for plaintiffs to obtain a reversal of the judgment, the duty devolved on them to show that the district judge had manifestly erred in his findings of fact. After a careful consideration of the record and of the written reasons for judgment, we find that counsel have failed to point out such error and we are satisfied that there is none such as to justify a reversal.

The case is one in which we are concerned primarily with distances and with the speed of motor vehicles. With regard to distances the record contains an admission on a vital and important point. That is that for a distance north, to a point 460.5 feet from the north end of the bridge across Salt Bayou, the highway runs straight, and from that point a curve extends some 600 feet further on the highway. The testimony of the witnesses as well as the plat of the locus made by a surveyor, and also the photographs introduced in evidence, all convince us that the curve is a gradual one extending northeast. Adopting these figures it can be said therefore to be a fact that from the point on the northern extremity of the bridge to the extreme north end of the curve, there is a distance of approximately 1,060 feet.

The point on the highway at which the Feibleman truck started to pass ahead of the cotton truck is also of vital importance in determining the question of the driver's negligence. The strong preponderance of the testimony is that he started to pass when he was in the northern end of the curve, the exact point, of course, it being impossible for anyone to state definitely. The district judge, giving the benefit of the doubt to the plaintiffs, as he says, adopted a point 200 feet from the northern extremity of the curve as the place where France started to effect his passage ahead. In fixing the place at that point, we think that he has liberally favored the plaintiffs. Even at that point however it is to be observed that the driver, France, still had 400 feet of the curve plus 460.5 feet of the straight road beyond, or a total of 860.5 feet, in which to pass ahead of the cotton truck when the Lincoln car was still south of the Salt Bayou bridge. We say this because by the testimony of the driver of the cotton truck, Hewey Johnson, who testified for the plaintiffs, the Lincoln car was just crossing the bridge when the Feibleman truck was even with the cotton truck. Certainly with that clearance ahead of him, it was reasonable for the driver of the Feibleman truck to assume that he could safely pass ahead of the cotton truck.

Under the provisions of the State Highway Statute, Rule 7, Title 2 of Act 21 of 1932, in effect at that time, the driver of a vehicle is prohibited from overtaking and passing another proceeding in the same direction upon a curve in the highway, but only where his view in doing so is obstructed within a distance of 500 feet. As we have already stated, the 600 feet curve in the highway at the point involved in this accident is gradual and the surrounding country being a marsh, there was nothing, as far as the record shows, to obstruct the view of the driver of the Feibleman truck when he started to pass ahead of the other truck.

The cotton truck with trailer attached was 35 feet long. We think it safe to say that at the moment the other truck started to pass ahead of it, the testimony shows that it was traveling at a speed of approximately 30 miles per hour. In order to pass ahead of it the Feibleman truck necessarily had to be going a bit faster and we believe that its speed as appears from the testimony was about 40 miles per hour. Taking into account the length of the cotton truck and trailer and the relative speed of the two vehicles, we see that the Feibleman truck was traveling 15 feet per second faster than the cotton truck and therefore

it would require a bit more than two seconds to have reached the point at which it was even with the cotton truck, at which time the witness Johnson says the Lincoln car was on the bridge. At the rate of 40 miles per hour the Feibleman truck was moving practically 59 feet per second. In two and one-half seconds therefore it would have traveled about 145 feet. So, when it was even with the cotton truck, it was still 715 feet from the bridge where the Lincoln car was, and unless that car was coming at the terrific rate of speed as the defendants contend it was, it is difficult indeed to apprehend any danger on the part of the driver of the Feibleman truck in completing his safe passage ahead of the cotton truck.

At this time it becomes necessary to refer to the speed of the Lincoln car for the purpose of determining whether the emergency which plaintiffs contend presented itself was created by the driver of the Feibleman truck and whether as a consequence he might be deemed guilty of the negligence charged against him.

■ Counsel for plaintiffs complain rather bitterly of the district judge's finding that the Lincoln car, at the time of the collision, was going at a rate of speed of 80 miles per hour, as they claim, that there is no proof in the record relating to the speed of that car after it had crossed Salt Bayou bridge. It must be borne in mind, that the northern extremity of the bridge was only 460.5 feet from the point where the curve began, and we think it safe to state, from all the testimony on the question, that the collision between the car and the cotton truck occurred about 100 feet north of that point. The Lincoln car therefore traveled approximately 560 feet from the time it crossed the bridge to the point of collision. A witness by the name of Dorr, who was standing on the north end of the bridge, and whose testimony the district judge accepted as being reliable, in testifying about the speed of the Lincoln car, refers to the view he had of it as it crossed over the bridge, as a "glimpse." He states that he never saw one travel any faster. His estimate of its speed in miles is from 80 to 90. There is the testimony of other witnesses who saw the car a few moments before it reached the bridge and there can be no doubt that from it all, that car was traveling at a highly excessive rate of speed. True, no one testified as to its speed in the short distance between the north end of the bridge and the point of collision but the pictures of the demolished car itself and of the trailer loaded with twenty bales of cotton which was torn away from the tractor and thrown over, furnished mute but rather positive and appalling evidence of an impact which could only have been produced by the Lincoln car going at a tremendous speed. As further proof, it is shown that even after such violent impact, the car continued down the highway nearly 200 feet before coming to a rest. It is our opinion therefore that the trial judge's finding on the question of the speed of the Lincoln car is amply supported by the testimony.

A motor vehicle traveling at the rate of 80 miles per hour is covering a distance of more than 117 feet per second and therefore it did not take the Lincoln car five full seconds to go the distance from the north end of the bridge to the point of collision. If the Feibleman truck had not entirely cleared the cotton truck and resumed its lane of travel on the right hand side of the highway, we can hardly understand how the Lincoln car could have avoided a collision with it, unless, as plaintiffs contend, it was driven off the paved slab on to the shoulder of the road, and in our opinion as found by the district judge, the testimony on that point does not warrant the court in holding that this is what happened.

■ The district judge found on the calculations made by him, as we have already stated, that the Feibleman truck was at least 100 feet ahead of the cotton truck at the time of the collision. On this point we think again that he was conservative in his estimate and that, if anything, the testimony would support a finding that it was probably a good bit more than 100 feet. If therefore there was an emergency which presented itself to the driver of the Lincoln car it was not of the making of the driver of the Feibleman truck, but most probably that of his own unfortunate action in driving at the rate of speed he was going. It is regrettable indeed that neither he nor the deceased girl who was in the car with him did not live long enough to give their version of what happened, but on the record as we find it the proof is lacking to show that it was through the negligence of the driver of the Feibleman truck that this tragic accident occurred.

■ France and the two men in the Feibleman truck with him did not return

to the scene of the collision after the accident. He stopped his truck at the north end of the bridge and spoke to the witness Dorr and also to a State Highway Patrolman who arrived shortly after, and then continued in his truck to New Orleans. Counsel for plaintiffs strongly assail his action and his failure to go to render assistance, and urge this as proof of a guilty conscience. The district judge condemned France's conduct in having failed to render whatever assistance he could have, but indicates also that the testimony in connection therewith was such as to absolve him of any intention to flee because he felt a sense of responsibility for the accident. As a matter of fact he did not flee. "It would be indeed unfair", states the district judge "to hold these defendants liable in damages when" he does not believe that "they are to blame just because their employee failed to render aid and assistance to those who were in dire need." In this, we agree.

As we have already stated, counsel for plaintiff have failed to point out to our satisfaction any error on the part of the trial judge which would justify a reversal of the judgment appealed from. We are unable to find any such error ourselves and therefore it would have to be affirmed.

Judgment affirmed.