**WILLIAMS et al. v. GEO. A. HORMEL & CO., Inc., et al.**

No. 6051.

Court of Appeal of Louisiana. Second Circuit.

Feb. 7, 1940.

Rehearing Denied March 6, 1940.

Writ of Certiorari and Review Denied April 29, 1940.

E. W. & P. N. Browne, of Shreveport, for appellants.

Henry F. Turner, of Shreveport, for appellees.

HAMITER, Judge.

A 1938 model Chevrolet sedan, operated by a colored chauffeur, Burl Williams, departed from Vicksburg, Mississippi, about six o'clock of the morning of October 21, 1938, and traveled westerly towards its destination, Shreveport, Louisiana. Other occupants of the car were Mrs. Dora F. Bridges and Mrs. Gussie F. Turner. Approximately one hour later, at a point six miles west of Tallulah, Louisiana, on U. S. Highway 80, it experienced a collision with a large International truck belonging to George A. Hormel & Company, Inc., which was being driven easterly by an employee, J. M. Biggs.

The highway at and near the place of collision is an 18-foot concrete slab bordered with grass-covered shoulders estimat-

ed to be 6 feet in width, is free of turns, runs east and west, and bears the customary black medial line.

The accident occurred as the truck attempted the passing of a third vehicle, driven by one M. A. Blanche, that was ahead and proceeding in the same direction. The Chevrolet, at the moment of impact, was traveling on its proper or the north side of the highway with its right wheels on the grass-covered shoulder. Also on said north side at that instant was the truck, both of its right wheels being about six inches north of the concrete's center line. Following the collision, the truck stopped on the pavement, while the Chevrolet proceeded off it. The latter, on becoming motionless, faced in a southerly direction with its rear wheels in a shallow ditch north of the concrete and the front ones on the shoulder.

This suit, in which Burl Williams, Mrs. Bridges, Mrs. Turner, Thomas W. Bridges, Jr., and the General Exchange Insurance Corporation are plaintiffs, grows out of such accident and has for its purpose the recovery of damages from the said Biggs and George A. Hormel & Company, Inc., and also from the latter's insurer, the Lumbermen's Mutual Casualty Company. The claims originally made are as follows:

Burl Williams—for pain and suffering and damage to clothing, $265;

Mrs. Dora F. Bridges—for loss of earning power, various and sundry injuries, pain and suffering and physician's expenses, $35,600;

Mrs. Gussie F. Turner—for injuries, pain and suffering, $3,000;

General Exchange Insurance Corporation —for amount paid under collision insurance policy to repair the Chevrolet, owned by Thomas W. Bridges, Jr., for which subrogation had been executed, $139.39;

Thomas W. Bridges, Jr.—for damages to his car not covered by insurance, $66.

The joint petition of the plaintiffs charges that the Bridges car was almost alongside of the Blanche vehicle when the truck was projected suddenly into its path of travel without any warning whatsoever. It is further asserted that J. M. Biggs was negligent in attempting to pass the Blanche car without having a clear path, maintaining a proper lookout, and having his truck under control; and that his negligence was the sole and proximate cause of the collision.

Defendants deny that Biggs was in any manner negligent or responsible for the accident. Alternatively, it is averred that plaintiffs were guilty of contributory negligence in that they, and especially the driver, Burl Williams, did not have the Chevrolet under proper control; that it was being driven at an excessive rate of speed; and that a proper lookout ahead was not kept. Additionally, defendants "specially plead the doctrine of last clear chance and discovered peril in bar of plaintiffs' right to recover herein."

The trial judge, after hearing evidence on the issues as thus formed, condemned defendants to pay, in solido, to Mrs. Dora F. Bridges the sum of $7,500; to Mrs. Gussie. F. Turner, $1,000; to General Exchange Insurance Corporation, $137.48; and to Burl Williams and Thomas W. Bridges, Jr., the full amounts of their respective claims.

Defendants appealed from the judgment. Answers to the appeal have been filed by Mrs. Bridges and Mrs. Turner, who ask that their awards be increased to $15,000 and $2,000, respectively.

█ It is conclusively established by the evidence, and admitted by all parties litigant, that the head-on collision occurred while the Hormel truck was traveling on the left side of the center line of the highway and attempting the overtaking and passing of the Blanche car proceeding in the same direction; therefore, Section 3, Rule 7 (c) of Act 286 of 1938, the Regulatory Highway Act, is applicable. This statutory provision reads: "The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety; provided, that whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing."

█ The highway in the vicinity of the collision was occupied only by the three above mentioned machines, and none of these was employing an excessive speed. In miles per hour, the Chevrolet traveled 35, the Blanche vehicle from 12 to 15, and the Hormel truck, while attempting the

passage, about 20. The latter had previously followed its lead machine for a distance of at least one-quarter of a mile. The Chevrolet's headlights were burning because of an existing fog that made visibility poor; however, daylight prevailed.

It is the testimony of the occupants of the Chevrolet car that as their machine approached the Blanche car, the truck emerged suddenly from behind it and crossed the center line. According to the estimates made by Mrs. Turner and Mrs. Bridges, and also by Mr. Blanche, who was called as a defense witness, the Chevrolet was only 30 feet from the latter's machine at the time of such maneuver. Thereupon Mrs. Bridges screamed and the chauffeur steered the right wheels of his car onto the grassy shoulder. The accident took place, stated Mr. Blanche, behind his machine, and "it happened so quick that just the time it (the Chevrolet) passed me I heard it."

Biggs, in explaining the collision, testified that after following the slow moving Blanche machine for a quarter of a mile he accelerated his truck to 20 miles per hour with the view of passing. No oncoming traffic was then visible. On account of the fog he was unable to see more than 250 or 300 feet ahead. When the front end of his truck was about opposite the middle of the Blanche car, the Chevrolet was observed approximately 200 feet away. Biggs then applied his brakes and attempted to fall back into the south traffic lane. His efforts were of no avail.

The evidence preponderately supports the version of plaintiffs regarding the sudden and unwarned appearance of the truck in the path of their westbound machine. If, however, the theory of Biggs is accepted, it seems to us that he was grossly negligent in employing the left side of the road, as he did, when the asserted poor visibility prevailed.

In all events, the conclusion must be reached that the presumption of negligence on the part of such truck driver and of its being the sole proximate cause of the accident, which was created by the stated circumstances and the above quoted provisions of law, has not been successfully overcome by defendants.

■ The plea of contributory negligence is without merit. The car of plaintiffs was proceeding on its proper side of the highway at a reasonable rate of speed and it is not disclosed that the chauffeur was driving imprudently, recklessly and in disregard of the rights of others.

■ Also inapplicable are the doctrines of last clear chance and discovered peril. It is true that Mrs. Bridges, as defense counsel points out, testified that she observed the truck when it was a quarter of a mile away; but it was then trailing the Blanche car and gave no indication of an intended crossing of the center stripe. The fact that the chauffeur did not steer his machine farther on the highway's shoulder and nearer the shallow ditch than was done, the performance of which maneuver possibly would have effected an avoidance of the collision, is without legal significance. A sudden emergency then existed and undoubtedly he did everything that could be expected of him under the circumstances.

The quantum fixed by the trial court on each of the claims of Burl Williams, Thomas W. Bridges, Jr., and the General Exchange Insurance Corporation, is not questioned in this court, and is sustained by the evidence.

A dispute exists as to the awards made to Mrs. Turner and Mrs. Bridges, of $1,000 and $7,500, respectively. These injured plaintiffs claim that such are inadequate, while defendants strongly urge their excessiveness.

■ Mrs. Turner, who accompanied Mrs. Bridges as a guest and companion, suffered numerous bruises and general bodily soreness, and was rendered very nervous as the result of the accident. These injuries occurred as several large sample cases, lying on the rear seat, fell on her, and also when she was catapulted against the back of the front seat. She was confined to her home and treated by a physician for at least two weeks, and the injuries endured for some time thereafter; however, at the time of the trial, held March 3, 1939, no physical abnormalities, except nervousness, were being experienced.

■ The injuries of Mrs. Bridges were of a more serious nature. She was apparently in excellent physical condition before the collision occurred, with the exception of being somewhat nervous because of the recent death of her husband. An examination by her physician on October 22, 1938, the day following the accident, disclosed a laceration on her forehead about an inch in length, with a large hematoma;

multiple bruises and contusions over the body; and a laceration on the left leg accompanied by a large hematoma. Excruciating pain in the lower portion of her back and generalized bodily pains also existed.

No appreciable improvement was noticed on the next inspection occurring ten days later. A thorough examination of her back was not permitted until November 7, 1938, at which time tenderness was found along the entire spine with most of it over the lumbosacral joint. When Mrs. Bridges was physically able to stand the making of X-ray pictures, this being on December 12, 1938, such were made.

The X-ray plates disclosed marked lipping of the anterior margin of the bodies of the fourth, fifth and sixth cervical vertebrae, a slight lipping of the anterior margin of the bodies of all lumbar vertebrae, and slight anterior slipping of the fifth lumbar vertebra over the first sacral segment. The lipping of the mentioned margin means the depositing there of excessive calcium, and is characteristic of hypertrophic arthritis. This arthritic condition of Mrs. Bridges had existed for at least a year, as previously made plates showed; however, it had never before provided any inconvenience, and, according to a preponderance of the medical proof, the accident caused its aggravation or flaring up and the pains emanating therefrom. It is also conclusively shown that the sustained trauma was responsible for the slipping of the fifth lumbar vertebra, as found, although there is testimony in the record that such a condition is sometimes congenital.

At the time of the trial, or more than four months after the collision, all of the numerous bruises and contusions on Mrs. Bridges had healed. Scars, which were hardly noticeable, remained from the lacerations on the face and left leg. The hematoma on that leg was evident but it had decreased in size. Severe tenderness over the lumbosacral joint continued, no improvement in this condition having resulted, and stiffness or rigidity of the muscles over the spine, especially in the cervical region, existed.

The mishap exaggerated the previously possessed nervous condition of Mrs. Bridges. When the trial was held, some improvement in her nervousness was observed, although it was then greater than immediately before the occurrence of the accident.

It was thought that the pain resulting from the flaring up of the arthritic condition could be eventually eliminated through rest treatments. The slipping of the lumbar vertebra provided the greatest problem; and the physicians agreed that surgery was the only method by which relief from it might be obtained. This necessary operation is major in character, costs approximately $600, including physician and hospital expenses, and a period of months is needed for its production of successful results.

Regarding the disability noticed after his examination of Mrs. Bridges, made shortly before the trial, a defense physician stated: "Well, that is hard to place the disability on an injury of that kind—it is more at first and gradually improves; some days it is worse than others; there are days she can be up and fine, and sometimes a little awkward strain or something will flare it up again and give some discomfort; I would not know exactly how to place the disability at present. * * * We usually place the maximum disability on a back injury, strained or torn ligaments—usually about two years. I don't mean totally disabled that long, but I mean the period of feeling discomfort at times. I don't mean total disability because Mrs. Bridges walked into my office, was able to be up and around."

Propounded to this mentioned defense witness was the question, "As I understand it from your examination, you would say that she will be more or less disabled for a period of two years?" He answered, "Yes, you cannot estimate exactly, it might be shorter and it could be longer, that is about the average I would say."

For approximately eight years, Mrs. Bridges has followed the occupation of selling children's clothing and linens in the states of Louisiana, Arkansas, Mississippi and Texas. This territory was covered by her four times each year, and she annually traveled by automobile between 40,000 and 50,000 miles. The impaired physical condition now prevents that traveling. Her annual net earnings amounted to approximately $2,400, and since her husband's death this occupation furnished her only source of income.

Persuasive arguments have been presented and numerous authorities cited to sustain the contentions of the respective counsel relative to the amounts of the awards made by the district court under the claims

of Mrs. Turner and Mrs. Bridges. However, after considering these and closely studying the evidence in the record, an analysis of which is given above, we are not convinced that the sums decided upon are manifestly disproportionate to the damages sustained. Therefore, they will not be changed.

The judgment, for the above reasons, is affirmed.