Immediately after it had overtaken and passed a truck with attached trailer, on U.S. Highway 71 about 10 o'clock of the morning of July 11, 1940, a Lincoln-Zephyr *Page 347 
coupe driven by Mrs. Curtis E. Ransbottom collided with an approaching Chevrolet coach operated by Janet Hardy, then a minor and the daughter of Edward S. Hardy.
Both of the named drivers were injured and their respective automobiles damaged.
To recover for the injuries suffered by his daughter, for medical and hospital expenses, and for the damages occasioned the Chevrolet which he owned, Edward S. Hardy filed this suit against Mrs. Ransbottom and the National Mutual Casualty Company, the insurer of the car that she drove. Additionally, he named as defendants Tom John, who owned the overtaken and passed truck, and the latter's insurance carrier, the Massachusetts Bonding 
Insurance Company.
Upon Miss Hardy's attaining the age of 21, by proper motion and order, she was designated a plaintiff respecting her individual claim.
Instituting another suit, it being for the recovery of the damages sustained by them, were Mrs. Ransbottom and her husband, Curtis E. Ransbottom, the proceeding bearing No. 6459 on the docket of this court. 9 So.2d 349. They cited Edward S. Hardy and his insurance carrier, Maryland Casualty Company.
In the pleadings of both suits, the Hardys charged that Mrs. Ransbottom was negligent in attempting a passing of the truck while Miss Hardy was approaching and nearing it and that her negligence proximately caused the accident. They further alleged that the driver of the Tom John truck was negligent in that he "carelessly and unlawfully either stopped, or suddenly slowed the speed of his truck in an attempt to stop on the concrete surface of said highway instead of pulling his truck over on to the dirt shoulder of the road as far as possible, as required by law."
Tom John and his insurer, in answering those allegations, denied negligence on the part of the truck operator.
The Ransbottoms averred in their pleadings that the collision was caused solely by the negligence of Miss Hardy in driving at an excessive rate of speed, in failing to keep her car under control, and in disregarding the wet condition of the highway. In this connection they show, to quote from the brief of their counsel, "that the car of Mrs. Ransbottom had reached a point where it was just in front of the truck when the Chevrolet went out of control, and that, upon observing the antics of the approaching automobile, Mrs. Ransbottom stopped her car in her right traffic lane and was struck by the Chevrolet car while her car was standing still on its own side of the highway."
The two cases were consolidated and tried together.
In this cause, Mrs. Ransbottom and the National Mutual Casualty Company were condemned in solido to pay to Edward S. Hardy the sum of $574.89 and to Janet Hardy $2,600. The demands of these plaintiffs against Tom John and his insurer were rejected.
The other suit, instituted by the Ransbottoms and being No. 6459, was ordered dismissed.
Both cases are before this court on appeals perfected by Mr. and Mrs. Ransbottom and the National Mutual Casualty Company. The claim of the Hardys against Tom John and his insurer has been abandoned.
U.S. Highway 71, at the locus of the accident, runs north and south and consists of a concrete slab 20 feet in width and wide grassy shoulders. The usual medial black line is present. A short distance north of that point, crossing the highway from northeast to southwest, are the tracks of the Missouri-Pacific Railroad Company.
A person standing in the center of the crossing can observe an automobile approaching from the south when it is 1,100 feet away, notwithstanding the existence of a slight or gradual curve in the highway which commences 450 feet from him.
At the time of the accident the pavement was damp, but clear visibility prevailed. Rain fell in the early morning of that day.
Several conflicts are noticed in the testimony of the witnesses as to the manner of the occurrence of the collision. However, after carefully and closely studying all of the evidence, an analysis of which in this opinion is unnecessary and will not be given, we are convinced that it occurred as hereafter stated.
Mrs. Ransbottom, while traveling toward the south, brought her Lincoln-Zephyr coupe to a stop just north of the railroad tracks. Then she proceeded across them slowly and found herself behind the Tom John truck, also headed in a southerly direction. This vehicle, consisting of a four wheel tractor and an attached trailer 20 *Page 348 
feet in length, was either parked or moving at an extremely slow speed on its right side of the highway.
While the truck was approximately 100 feet south of the crossing, Mrs. Ransbottom steered to the left side of the road and sought to pass it, all the time driving her machine in second gear. The Hardy car, during this attempted passage, was approaching and was some place north of the slight curve in the highway, its exact location not being clearly shown. It could not have been more than 350 feet from the truck, and we think much less than that, because the crossing was situated 450 feet north of the point where the curve commenced and 100 feet north of the truck.
Miss Hardy, on observing the two vehicles ahead of her, applied her brakes. This application, along with the damp pavement, caused her machine to skid to the left or the west side of the highway. Thereupon she momentarily released the brakes and then again applied them; and she sought to regain the east traffic lane.
While the Hardy car was traveling at an angle toward its right side the left rear fender thereof came in contact with the left front fender of the Ransbottom coupe at a point at or very near the black line. The left rear end of the latter machine was then in the east or wrong traffic lane and 8 to 10 feet in front of the truck, this indicating that, when the collision occurred, the Ransbottom car had passed the truck but had not completely regained the right side of the highway.
As the vehicles came together, Miss Hardy was catapulted to the pavement. Her car continued to its right and stopped in the ditch on the east side. The other automobile was pushed backward or northward a distance of about 4 feet.
The described factual situation clearly causes the existence of a presumption of responsibility on the part of Mrs. Ransbottom, such as is created by the following provision of the highway regulatory act of Louisiana: "The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety; provided, that whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing." Rule 7 (c), Sec. 3, Act No. 286 of 1938.
Of course, the mentioned presumption is rebuttable; but the burden of rebutting it, carried by defendants, has not been discharged. It was not proved that Miss Hardy was traveling at an excessive rate of speed. Only one person testified that she was driving too fast, he being the colored operator of the truck owned by Tom John, a defendant in the case. The disinterested witnesses, as well as Miss Hardy, said that her speed was well below 50 miles per hour.
Neither has it been shown that Miss Hardy was a considerable distance away when Mrs. Ransbottom attempted the overtaking and passing of the truck. On the contrary, considering that Miss Hardy's speed was not excessive, the fact that the impact occurred before the Ransbottom car completely returned to the right side of the highway indicates that a slight intervening distance existed.
Mrs. Ransbottom either did not observe the oncoming car as she could and should have done, her view being unobstructed for a distance of 1100 feet, or else she saw its approach and directed her machine at a slow rate of speed alongside and around the lengthy truck when the Hardy automobile was too close to permit that maneuver in safety. She, under either of those theories, was negligent, and her negligence, in our opinion, was the proximate cause of the accident.
The fact that the Hardy car skidded to the left side of the highway does not disclose negligence on the part of its driver. She was faced with an emergency not of her own creation, the east traffic lane being then blocked; and the application of the machine's brakes, resulting in the skidding, was the natural procedure of a prudent person.
In the case of Rockefeller v. Shreveport Yellow Cabs, 183 So. 141, 142, which involved somewhat similar facts, this court appropriately stated: "Reagor's car was in plain view of defendant's driver when he started to pass the plaintiff's automobile. The fact that defendant's driver thought he could make it safely does not meet the requirements of the law. The fact is he did not make it and could not do so under the conditions then existing and he attempted to pass at his own risk." *Page 349 
Also supporting our conclusion is Williams v. George A. Hormel Company, La.App., 195 So. 634, in which there was held applicable the aforequoted statutory provision.
Defendants rely principally on Dew et al. v. Massachusetts Bonding Insurance Company et al., La.App., 183 So. 592.
The facts of the two cases are distinguishable. The Hardy machine was not experiencing an excessive rate of speed as was the similarly situated automobile in the cited authority. Then, too, the Ransbottom car had not completely returned to its side of the highway and was only 8 to 10 feet in front of the truck when the impact occurred; whereas, in the Dew case the overtaking machine had completed its passage of the overtaken truck, which traveled approximately 30 miles per hour, and was more than 100 feet ahead of it and on the right side of the road at the moment of the collision.
We are not disposed to disturb the quantum fixed by the trial court, except in the particular hereafter stated, notwithstanding the complaint of its inadequateness on the part of plaintiffs and that of excessiveness made by defendants.
When lifted from the pavement Miss Hardy was unconscious and bleeding. Consciousness was regained while being removed in an automobile to a clinic in Alexandria. From this place she was carried by ambulance to the Baptist Hospital where it was found that she had suffered considerable shock, lacerations across the nose and in the mouth, multiple bruises about the head with marked swelling and about the left arm, chest wall, and hip, a brush burn on left leg, and spasm of the muscles over the region of the lumbar vertebrae. Additionally, the clinical examination revealed basal fracture of the skull and concussion of the brain; but this was not disclosed by the X-rays made. There were no bone fractures.
For eleven days she lay in bed in the hospital, flat of her back, under the constant care of physicians and special nurses. Thereafter, she spent from three to four weeks in bed at her home, all the while receiving medical attention.
At the time of the trial, occurring more than one year after the accident, she still experienced headaches, nervousness, and pain in her left chest; and there existed a scar one-half inch long across the bridge of the nose and a slight deformity in the upper lip, both of which were caused by lacerations and are disfiguring to some extent.
The clinically found basal skull fracture, opined two of the medical experts, may result in future complications.
Miss Hardy, when injured, was a student at Louisiana College; and, besides experiencing pain, discomforts, inconveniences, and the permanent disfigurement, she lost more than a month from her scholastic work.
The $2,600 allowed this injured young lady for the stated consequences of the collision, it seems to us, does justice between the parties.
Included in the damage award of $574.89 made to Edward S. Hardy is the sum of $50 for loss of use of his automobile for ten days. This item, so far as we can find, is not supported by any evidence; hence, it must be disallowed.
Accordingly, the judgment is amended by reducing the award made to Edward S. Hardy from $574.89 to $524.89; and, as amended, it is affirmed. Costs of this appeal shall be paid by plaintiffs, while defendants are cast for all other costs.