Plaintiff's "Texaco" truck was damaged on September 29, 1947 in a collision near Grand Ecore in Natchitoches Parish, Louisiana. Alleging that the collision resulted from the negligence of the driver of a Grapette Bottling Company truck, owned by defendant, in failing to keep a proper lookout for oncoming traffic while he was following too closely a school bus and attempting to pass this school bus in a curve of the road and on a hill, plaintiff asked for a $284.23 judgment against the defendant.
Defendant admitted that a collision occurred between the two trucks; denied any negligence on the part of his own driver and pleaded in the alternative, in the event the driver of the Grapette truck should be found guilty of negligence, that the driver of plaintiff's truck was guilty of contributory negligence in driving at an excessive speed; in failing to keep a proper lookout and to keep his vehicle under control; in failing to keep on his own side of the road and in driving the truck in a reckless manner. In further alternative, defendant pleaded that the driver of plaintiff's truck had the last clear chance to avoid the accident.
Assuming the position of plaintiff in reconvention and alleging that the accident happened on defendant's right side of the road and resulted solely from the negligence of plaintiff's driver as above set out, defendant asked for judgment against plaintiff for damages to the Grapette truck totaling $740.00.
We give below an extract from the written opinion of the District Court, filed October 21, 1948, which gives an accurate description of the accident as reflected by the record: "The physical facts as described by the witnesses and augmented by the pictures, particularly the picture identified as P-2, gives the Court the following picture of the accident. Grapette truck going North behind school bus at about 15 or 20 miles per hour, and very probably as close as 20 to 30 feet behind school bus. I believe this distance about correct, because its driver swung to his left in order to ascertain whether or not he would have an opportunity to pass. Had he been more than 100 feet behind this bus, particularly on a right hand curve as shown by the pictures, his method of ascertaining whether or not a vehicle was approaching from the North would have been to simply look at the road ahead which curved to the right of the bus. He would have looked to the right of the bus rather than to the left. Now having come out from behind the bus and rather close to it, the Grapette truck gave the impression to the driver of the Texaco truck that he might attempt to pass. I believe this indicates that the Grapette truck crossed the black line for the spontaneous reaction of the driver of the Texaco truck indicated it. Evidently, the drivers of the two trucks saw each other at about the same time for the Grapette truck quickly retired back across the black line and the Texaco truck pulled his right wheels off of the pavement and on to the right shoulder and stepped on his brakes. What happened next is clear — the Texaco truck angled across the paved road and struck the Grapette truck on or beyond the black line. The evidence of this is clearly shown on the picture marked P-2. Now as to why the Texaco truck changed its obvious previous direction and angled off to its left causing damage to all concerned, *Page 716 
and precipitating this law suit, is a question the answer to which is the answer to this law suit."
In the original opinion, from which the above is quoted, the District Judge concluded that the veering to the left of plaintiff's Texaco truck, after its driver had pulled to the right and applied the brakes, was due to the failure of the braking system on the Texaco truck to function properly and concluded that the demands of plaintiff should be rejected and that there should be judgment in reconvention for the sum of $362.00.
On rehearing the attention of the District Court was called to testimony in the record that the brakes on the Texaco truck were examined immediately after the accident and found to be in proper condition. The District Judge then concluded that the accident resulted from the action of the driver of the Grapette truck in darting out from behind the school bus and thus creating an emergency which justified the driver of the approaching Texaco truck in pulling to the right and slamming on his brakes with the resulting skidding of the vehicle into the Grapette truck, which had meanwhile, after seeing the approaching Texaco truck, retired back across the black line.
His judgment; after rehearing, was in favor of the plaintiff as prayed for and the. case is now before us on defendant's appeal from that judgment.
The record supports the findings and conclusion, on rehearing, of the trial Judge. At the point of the impact, the Grapette truck had come over a slight rise and was completing the rounding of a distinct, but not sharp, curve. The driver of the Grapette truck was following closely behind the school bus. He admitted that he drove his truck over to the center line for the purpose of looking down the road and determining whether or not the coast was clear for passing. The size of the school bus and the westward curve of the road were such as to prevent the driver of the Grapette truck seeing around the left of the school bus without crossing the center black line.
While the driver of this truck testified that his purpose in driving to the left was simply to look down the road, the driver of an approaching vehicle can only judge the intentions of drivers of vehicles in the stream of oncoming traffic by what he sees, and the action of the driver of the Grapette truck in pulling from behind the school bus and over into the path of oncoming traffic was sufficient to justify the Texaco driver's pulling to the right and applying his brakes. Having thus acted reasonably — in an emergency not of his own creation — he is not to be held guilty of negligence simply because later developments were such that he would have been safe had he continued down the road on the assumption that the Grapette truck would get back into its right lane of traffic.
The law applicable was discussed in the case of Hardy, et al. v. National Mutual Casualty Co. et al., La. App., 9 So.2d 346, 348. In that case the defendant motorist attempted to pass a truck and trailer at a time when the Hardy automobile was approaching from the other direction. Miss Hardy, the driver, applied her brakes, her car veered and skidded to her left side and into the vehicle which had just completed the passing maneuver. In that case the Court stated: "The fact that the Hardy car skidded to the left side of the highway does not disclose negligence on the part of its driver. She was faced with an emergency not of her own creation, the east traffic lane being then blocked; and the application of the machine's brakes, resulting in the skidding, was the natural procedure of a prudent person."
We conclude that the action of defendant's driver in crossing the center line and coming out from behind the school bus was in violation of Rule 7(c) and (d) of Section 3 of Act No. 286 of 1938; that such negligent action was the proximate cause of the accident; that the action of the driver of plaintiff's truck, when confronted with the emergency, in pulling to the right and applying the brakes was the natural procedure of a prudent person.
The record does not show that plaintiff's truck was traveling at an excessive rate of speed or that the driver was guilty of any of the other acts of negligence *Page 717 
set forth in the answer. The facts are such that the pleaded doctrine of last clear chance is not applicable.
The judgment appealed from is affirmed, with costs.