94 So.2d 492 (1957)
Mrs. Dannie T. BROCK, Plaintiff-Appellant,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY et al., Defendants-Appellees.
No. 4380.
Court of Appeal of Louisiana, First Circuit.
March 25, 1957.
Rehearing Denied May 2, 1957.
Writ of Certiorari Denied June 28, 1957.
*493 Ponder & Ponder, Amite, for appellant.
Porteous & Johnson, Adams & Reese, New Orleans, H. H. Richardson, Bogalusa, for appellees.
TATE, Judge.
This personal injury suit was tried before a jury. Plaintiff appeals from verdict and judgment dismissing her suit.
At approximately 4:30 p. m. on July 22, 1954, a 1954 Cadillac automobile being driven by plaintiff, Mrs. Dannie T. Brock, in an easterly direction on Louisiana Highway 71 collided with a motor truck driven by Willie J. Brumfield, which was proceeding in a westerly direction, almost in front of the Williams' home.
Prior to the accident, a Ford automobile driven by Hugh Douglas Cutrer was stopped in the westbound traffic lane in front of the Williams' home to give Rufus Williams a ride into Kentwood.
Made co-defendants herein were: James B. Sumrall and the Southern Farm Bureau Casualty Insurance Company, the owner and liability insurer respectively of the pulpwood truck driven by Brumfield, Sumrall's employee; and Hugh Douglas Cutrer and the State Farm Mutual Automobile Insurance *494 Company, owner and liability insurer respectively of the stopped Ford car.
Highway 71 was blacktopped and 18' in width at the place of the accident. The weather was dry and visibility was clear.
In broad outline, the physical facts of the accident are relatively uncontroverted:
The Cutrer car, stopped to pick up Williams, was parked at least partly in its (the westbound) traffic lane of the highway. The Brock Cadillac was proceeding towards the east at a speed of 35-45 mph. It had just crossed a bridge 300 feet west of the scene of the accident when Cutrer stopped. The large pulpwood truck, westbound like Cutrer, was approaching from Cutrer's rear.
At a point approximately 100' to the rear of the Cutrer automobile, the truck brakes were suddenly applied (causing a screeching sound and skid marks 90' in length); the truck skidded straight down its own lane for approximately 60 feet then veered gradually into the other traffic lane, upon which Mrs. Brock was approaching from the opposite direction.
The point of impact was east of the Williams' driveway, i. e., to the rear of the Cutrer car; the distance being from 2'-20' east thereof according to the varying testimony. The collision between the left fronts of the truck and of Mrs. Brock's Cadillac definitely occurred in her lane of traffic, the estimates of the point of impact varying from two to six feet within same and north of the center line. Mrs. Brock's Cadillac had veered partly onto the shoulder, Mrs. Brock testifying that upon seeing the truck skidding she attempted to get off the highway. Upon the impact, her car was deflected further into the ditch, causing certain personal injuries to the two ladies riding therein.
The theory upon which Mrs. Brock brought suit was that the accident was caused through the concurrent negligence of Cutrer, the driver of the Ford, in suddenly stopping upon the travelled portion of the roadway in the truck's path; and of Brumfield, the driver of the pulpwood truck, in proceeding at such excessive speed and lacking such control of his vehicle as to be unable to avoid invading the lane of the highway reserved for opposing traffic such as plaintiff.
We do not think the evidence can be construed to hold that the stopping of the Cutrer car was either the sole or a contributory proximate cause of the accident. The preponderant evidence is that Cutrer had stopped in front of the Williams' driveway just before the truck turned a slight curve approximately 300' east of the driveway. The hitchhiker had had time to take several steps toward the car, when Cutrer noted in his mirror what he felt to be the excessive speed of the truck about 200' behind him and yelled to Williams to watch out and started his car forward.
This testimony of Cutrer is corroborated by that of his passenger and the hitchhiker and by that of plaintiff and her passenger. The point of impact was east of or behind the point where the rear of the Cutrer car was parked. The only testimony of a sudden stop such as might import liability to Cutrer and his insurance carrier, see e. g., Reeves v. Caillouet, La.App., 1 Cir., 46 So.2d 373, was that of the truck driver and one of his passengers. (The other truck passengers were not called to testify.) In our opinion both the preponderant contrary testimony and the physical facts justify the non-acceptance of the conclusion that a sudden stop precipitated the accident.
In our opinion, the driver of the pulpwood truck was just as clearly negligent, accepting the preponderant testimony that Cutrer did not stop suddenly.
The collision definitely occurred on plaintiff's side of the road. "The fact that a collision occurs while a vehicle is being driven on the wrong side of the road places the burden on the driver of such vehicle to show that the accident was not caused by his negligence in driving his vehicle on *495 the wrong side of the highway," Miller v. Hayes, La.App. 1 Cir., 29 So.2d 396, at page 398.
The probable reconstruction of the cause of the accident, based upon the testimony and the physical evidence, is that the truck driver did not perceive plaintiff's oncoming Cadillac until too late, perhaps due to inattention or to the slight curve he was on immediately before the straight stretch; that he suddenly applied his brakes and was unable to avoid veering into the plaintiff's lane of traffic.
Both plaintiff and Cutrer testified as to the apparently very excessive speed of pulpwood truck; and in corroboration point to the great damage done (even after the application of four-wheel brakes causing skid marks 90' in length) by the impact to plaintiff's automobile. The truck driver, however, testified to a speed of approximately 40 mph, coming to a complete stop immediately before the Cadillac struck him.
And although we think the physical facts, including the damage done and the deflection of plaintiff's car from its course, may tend to corroborate the version of excessive speed, we do not believe necessary a resolution of this conflict. In either event, plaintiff at a speed of 35-45 mph (i. e., 51.1' to 65.7' per second) did not have a duty under the circumstances of this case to anticipate that the oncoming truck would be so negligent in lookout and control as to be unable to avoid striking the Cutrer car without crossing over into plaintiff's lane of traffic. The truck, proceeding at the least at a similar speed, did not apply its brakes until it was 90' in the rear of the Cutrer car. At a speed of 35-45 mph plaintiff was less than two seconds away; nor did the driver actually lose control of the truck until the skid had proceeded about 60' of the total brake-marks. If the truck was proceeding at an excessive speed, the time available to plaintiff to evaluate the truck's inability to stop was slight if at all existent prior to the application of the brakes; the accident would occur before the normally prudent driver could evaluate the danger and act accordingly: for example, at a speed of 60 mph (87.6' per second) the truck would have turned the curve east of the scene of the accident and hit plaintiff 300' away in less than four seconds. At a lessor speed of the truck, there was less duty upon plaintiff to anticipate the truck driver's subsequent failure to slacken his speed and maintain control in default of his legal duty.
The jury found for defendants, dismissing plaintiff's suit. We do not believe the evidence, however construed, could support a finding that the accident was not caused through the negligence of either one defendant or the other, or both. We must therefore assume that the jury found plaintiff guilty of such contributory negligence as to defeat recovery.
The theory upon which plaintiff might be held contributorily negligent is stated in "Special Charge No. 4" given at the instance of co-defendants Sumrall and Southern Farm Bureau Casualty. This charge was:
"if you find that the plaintiff, Mrs. Dannie T. Brock, could have prevented collision after discovering the peril when the Cutrer automobile suddenly stopped and was being followed by the Sumrall truc [sic], then judgment should be rendered for defendants, rejecting the demands of plaintiff at her cost." (Italics ours.)
This charge refers to the duty by reason of which a reasonably prudent motorist may be held negligent if he has the reasonable opportunity to observe cars or people in his path (through their own negligence or otherwise) and to evaluate the danger of the situation, and if he has the reasonable opportunity through use of ordinary care to avoid an accident and fails to do so. Brooks v. State Farm Mutual Automobile Insurance Company, La.App. 2 Cir., 91 So.2d 403.
*496 It can be seen, among other objections, that the charge states that Mrs. Brock's recovery must be denied if she "could have prevented the collision" after discovering the peril. The legal barrier as to this phrase should have been qualified in that the recovery should be denied only if by the exercise of ordinary care plaintiff could have prevented the collision. Very probably the accident could have been avoided had Mrs. Brock veered to her right more sharply or slightly quicker; but the legal question is not whether physically she might possibly have been able to skin by without a collision, but whether her failure to do so violated a legal duty so as to constitute contributory negligence upon her part. Of course, Mrs. Brock's misjudgment in the face of a sudden emergency created a second or so before through the negligence of the truck driver does not constitute contributory negligence, see e. g., Chouest v. Remont, La.App. 1 Cir., 81 So. 2d 568.
Were this a jurisdiction within which the jury verdict must be accepted if supported by a scintilla of evidence, we would be impelled to affirm the denial of recovery, even though feeling that the clear preponderance of evidence shows that the sole proximate cause of the accident was the negligence of the truck driver. For Mrs. Brock testified at one point that she heard the noise of the truck indicating its great speed before it rounded the curve about 300' east of the point of the accident, which reasonable men might possibly think gave rise in conjunction with observing the parked car to a duty on her part to take further precautions, even though the accident was just 3-4 seconds distant in time. But she is contradicted by every other witness in the record, including her own passenger[1]; her windows were up and her air-conditioning was on, which as one of the witnesses noted made even less possible such testimony; and this testimony must be regarded as impossible, mistakenly given perhaps due to the kaleidoscopic jumble of sensations bursting upon her within less than two seconds of sudden great danger and near tragedy, and the subsequent emotional shock.
Our present constitutional duty is to review all appeals "both upon the law and the facts", Article 7, Section 29, La.Constitution, LSA. We would be abdicating our constitutional function were we to sustain the judgment below solely on the basis of evidence we find clearly and manifestly erroneous. We therefore find that the sole proximate cause of this accident is the negligence of Brumfield, driver of the truck owned by defendant Sumrall and the operation of which was insured by defendant, Southern Farm Bureau Casualty Insurance Company. See Todd v. Kirspel, La.App. 2 Cir., 41 So.2d 714, Hardy v. National Mut. Cas. Co., La.App. 2 Cir., 9 So. 2d 346, resting upon similar situations.
Quantum.
Mrs. Brock's personal injuries consisted of a whiplash injury of the neck and right brachial plexus (the nerve network leading to the right arm), a contusion of the knee, and severe nervous shock. She is a lady sixty-two years of age. The whiplash injury caused severe pain at first, moderating in degree over a period of six months; and aching pain in the arm and shoulder severe enough to require the use of sedatives to attain sleep, for at least part of this time. The preponderance of the testimony was that there is slight if any residual at the time of trial two years later. Because of the shock sustained in the accident, Mrs. Brock claims to be extremely nervous now when driving. The proof offered is somewhat weakened by the failure to produce any medical specialists who had examined Mrs. Brock, and is mostly supported by that of her husband and son, both general practitioners.
*497 We think the injuries are a little more serious than those in Attaya v. Zimmerie, La.App. 1 Cir., 83 So.2d 676, for which we awarded $2,500, and less serious than those in Baker v. U. S. Fire Ins. Co., La.App. 1 Cir., 89 So.2d 405, wherein $5,600 was awarded (including $633.31 upon a subrogation intervention for compensation and medical expenses paid by the employer.) Our award therefore will be in the amount of $3,500 for personal injuries.
Plaintiff's Cadillac car, was severely damaged in the accident. It is undisputed that the cost of repairing same was $2,515.88. Defendants raise the question that plaintiff's husband, not herself, was the proper party to sue for damage to property bought during the marriage.
The evidence is not contradicted that the automobile was given to plaintiff as a birthday present two days before the accident. The automobile was therefore the wife's separate property, Article 1746, LSA-C.C., Succession of Williams, 171 La. 151, 129 So. 801 (syllabus 5), Succession of Dupre, 2 Orleans App. 441, and she was a proper party to bring suit for damage thereto either under Mississippi law (plaintiff residing in Mississippi where marriage does not import the community property relationship), cf. Lewis v. American Brewing Co., La.App. Orleans, 32 So.2d 109, or under Louisiana law, Spencer v. Crain, La. App. 1 Cir., 53 So.2d 416.
Plaintiff produced proof that, even before repaired several months later, the car was traded in for another brand-new Cadillac at a net loss of $1,250; she demands recovery therefor, also, in accordance with her prayer. Although plaintiff did prove that her car was traded in for such differential, there is no testimony to support the conclusion that such differential was a result of a loss in value occurring by reason of accident; no testimony of the difference in trade-in or other value between her car as repaired, and her car before wrecked at all. That is, so far as the record shows, plaintiff may have been forced to pay such a differential to obtain another brand-new Cadillac, whether or not her two-day old car as repaired had ever been involved in a wreck.
For the above and foregoing reasons, the judgment is affirmed insofar as it dismisses plaintiff's claim against Hugh Douglas Cutrer and his liability insurer, the State Farm Mutual Automobile Insurance Company; but it is reversed insofar as it dismissed plaintiff's suit against James B. Sumrall and his liability insurer, Southern Farm Bureau Casualty Insurance Company, and judgment is herewith rendered in favor of plaintiff and against the latter two defendants holding them liable in solido to plaintiff in the full amount of Six Thousand Fifteen and 88/100 Dollars ($6,015.88), together with legal interest thereupon from date of judicial demand until paid, and for all costs of these proceedings.
Affirmed in part; reversed in part.
NOTES
[1] It is clear that the only prior noise made by the truck heard by this passenger is the brake-screeching almost instantaneously with the impact, Tr. 39, 49, 51.