110 So.2d 595 (1959)
William P. HARVEY et ux., Plaintiffs-Appellees,
v.
GREAT AMERICAN INDEMNITY COMPANY et al., Defendants-Appellants.
No. 8885.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1958.
On Rehearing February 2, 1959.
*596 Theus, Grisham, Davis & Leigh, Monroe, Campbell & Campbell, Minden, for appellants.
Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for appellees.
GLADNEY, Judge.
This action by William P. Harvey and his wife, Abbie W. Harvey, was instituted against nine defendants: T. B. McDuff, J. E. Godfrey, McDuff & Godfrey, partnership owners of a 1956 International two and one-half ton truck-trailer; Fred E. Ford, driver of the truck, Great American Indemnity Company, insurer of the truck, Manufacturers Casualty Insurance Company, public liability insurer of Elmer White's Mercury automobile, L. M. Winford, a road contractor who was engaged in the repair of a portion of U. S. Highway No. 79 between Homer and Minden, Louisiana, and Travelers Insurance Company and Travelers Indemnity Company, alleged to be the insurers of Winford. By agreement of counsel Travelers Indemnity Company was dismissed from the suit. The case involves liability for personal injuries sustained by Abbie W. Harvey and medical expenses incurred by William P. Harvey by reason of an automobile accident which occurred at 9:20 o'clock P.M. on the night of July 31, 1956, between the Mercury automobile owned by Harvey and the trucktrailer *597 owned by the partnership above mentioned. Injured in the accident were Abbie W. Harvey and Dorothy White, who were riding in the Mercury at the time of the collision.
This suit for purposes of trial was consolidated with one brought by Dorothy and Elmer White as it arose out of the same accident and involved the same defendants. After trial of the case, judgment was rendered in favor of Abbie Harvey for $4,000 on account of her alleged injuries and William P. Harvey was awarded $708.35 for expenses. The judgment was rendered against the driver and owners of the truck, the contractor, and the above named insurers, in solido. All parties defendant have appealed. Plaintiff, Abbie Harvey, has answered the appeal asking the award in her favor be substantially increased.
This vehicular collision occurred in an "S" curve approximately eight hundred feet south of the point where the hard surfaced highway crosses the Claiborne-Webster Parish line. The eighteen foot hard surfaced highway at the time of the accident was being widened and resurfaced by L. M. Winford, who had contracted therefor with the Louisiana Highway Commission. It had been raining for about two hours before the accident. A Mercury automobile owned by Elmer White and operated by his wife, Dorothy White, was going south. Abbie W. Harvey, a guest passenger in the car, was seated on the front seat and Elmer White was on the rear seat. Following the Mercury, also going south, was an empty trailer-truck owned by McDuff & Godfrey, and driven by Fred E. Ford. As the Mercury rounded the first curve its driver saw ahead of her the headlights of two cars which appeared to be stopped and were shining in her direction. Dorothy White reduced the speed of her car gradually and as she neared the stopped vehicles, the truck-trailer jackknifed into the rear of the Mercury which was knocked off the highway. Abbie Harvey and Dorothy White were injured.
The appellants now concede the judgment from which they have appealed is correct insofar as it has determined Dorothy White, the driver of the Mercury, was free of negligence. As we understand the record, two principal issues are presented. First, whether the owners and driver of the truck-trailer, on the one hand, or L. M. Winford, on the other hand, or both, and their respective insurers should be held liable for the damages which ensued from the accident. It is earnestly contended by counsel representing the driver, owners and insurer of the truck, that the sole proximate cause of the collision was the slippery condition in which Winford left that portion of the highway where the accident occurred, without providing adequate warnings to motorists. Winford, on the other hand, contends the sole and proximate cause of the accident was the negligence of Fred Ford in driving his truck too closely behind the Mercury under existing known road conditions. A second issue is raised and that relates to the proper award which should be made for the personal injuries received by Abbie Harvey.
When the accident happened construction work was proceeding for several miles, during which time and while the work was being done, travel by the public was being permitted to continue. Signs declaring the road was being repaired were erected at the southern and northern extremities of the work and were several miles apart. Similar signs were erected at the entrance of all side or entrance roads in such a manner as to warn travelers proceeding on these side roads that the highway was under repair. It is also shown on or before July 30th, the day prior to the accident, a sign was erected near the south end of the project and faced traffic traveling from Minden toward Homer on the highway, which warned that fresh oil had been applied to the road surface.
The procedure employed in the resurfacing of the highway was described by an engineer of the Louisiana Highway Commission. After the road had been widened on *598 either side to the level of the already existing concrete section (which in this case was an 18 foot section), the contractor first applied what was described as a two-inch binder course; he next sprayed the entire surface with a highly volatile substance such as naphtha or gasoline, intermixed with asphalt, which was referred to in the evidence as a "tack" coat, over which the "hot mix" asphalt was spread. The object of the tack coat was to bind the existing concrete surface to the "hot mix". Because of the rapid evaporation of the volatile properties of the tack coat, it was customary to pour the hot mix in a matter of hours after the tack coat was applied, it being our appreciation that when evaporation had reached a certain stage, the tack coat became "sticky" or "tacky". If allowed to stand too long (more than 12 to 18 hours) all the volatile properties would evaporate, leaving nothing but a thin surface of pure untreated asphalt. (If this happened the engineer would require the contractor, before applying the surface course, to apply another tack coat, of which no record was maintained, since the contractor was paid for only one application of tack coating.)
According to the testimony, on the day prior to this accident, the contractor (having already laid the binder course) applied a tack coat commencing at the Claiborne-Webster line and extending toward Minden 1,385 feet. On that same day, the "wearing course"that is, the completed roadhad been laid from the line to a point 1,000 feet north (or toward Homer) thereof. The tack coat had been applied at least thirty or more hours prior to the accident.
One driving from Homer toward Minden on U. S. Highway No. 79 is traveling generally in a southwesterly direction and upon arrival at the Webster-Claiborne Parish line the road turns rather sharply to the right, from which point it proceeds down grade for several hundred feet, thence it makes a rather sharp left turn.
As pointed out above, the accident occurred approximately 800 feet or more south of the parish line. On July 30th the tack coat had been applied and had remained on the road for a period of approximately 30 hours. The record makes it abundantly clear that as a result of the rain which began about two hours before the accident, the asphalt surface of the road became slick. This fact is substantiated by the testimony of Modest Walker, who was the owner of one of the two cars Dorothy White observed stopped ahead of her. Walker's car had skidded off of a curve because of the slippery surface of the highway. Officer D. R. Veitch, a state highway patrolman, likewise testified the road surface in the vicinity of the accident was slippery. Other witnesses gave testimony to the same effect.
Dorothy White, in relating her version of the accident, stated that as she entered the first curve which proceeded down grade, she was traveling 35 to 40 miles per hour and shortly thereafter perceived headlights shining from the cars which appeared to block the highway ahead. She gradually slowed her automobile until she arrived at a point about 60 feet from the bunched cars, at which time she applied her brakes lightly and this action was reflected in her indicator lights. It was at this time the truck-trailer driven by Ford, struck the Mercury and knocked it some distance to the right of the highway. Both Dorothy White and Abbie Harvey testified they did not observe the lights of the truck to the rear, but did hear the sound of its airbrakes. Dorothy White said she did not give any arm signal as it was raining at the time and her window was up. The testimony of Elmer White was substantially the same as that of his wife and Abbie Harvey. The Mercury, they testified, experienced no difficulty in traveling over the portion of the road under repair.
Ford testified he had been hauling cotton from Shreveport to Bernice for about three weeks prior to the accident and on each trip traveled over the highway between Homer and Minden. He said that on July 31st he left Shreveport about 7:30 o'clock *599 A.M., unloaded in Bernice about noon, then after lunch drove back to Shreveport and thence back to Bernice where he unloaded and left about 8:15 o'clock P.M. It was on this return trip to Shreveport that the accident happened. He testified that upon arriving near the Webster-Claiborne line he had been trailing the Mercury for about a mile, but not overtaking it and was not intending to pass it. He relates he topped a rise and estimated the Mercury was about 100 feet ahead of him. He then saw headlights of two cars on the right side of the highway which were about 100 to 150 yards away. Because the lights on one car were shining directly toward him, he could tell it was on the wrong side of the road. When he saw these lights he immediately applied his brakes and his truck-trailer tried to jack knife. He goes on to say:
"At that time, there were no brake lights burning on the rear of the Mercury. I got my trailer straightened out and fell in behind the Mercury again, and was about 75 to 100 feet behind it. Both of us went on forward for a litle ways, maybe 25 or 30 feet, when suddenly the brake lights on the Mercury came on and it started stopping fast. When the Mercury started slowing down so fast, it was still 75 to 100 yards from the stopped cars. I applied my brakes, and my trailer again started to jack-knife because of the wet, fresh oil on the road was as slick as glass. I saw that the left lane was open, so I pulled to the left, hoping either to pass, or straighten out the trailer. However, the right side of the trailer hit the left rear of the Mercury, which was still moving at about 15 miles an hour, and I was going maybe 15 miles an hour."
When the witness was questioned as to when he first detected the slicky area or surface, he replied:
"Somewhere along where this accident happened, when we first came over that hill. As you drop over the hill it was in kind of a curve and the curve was made slanting lower on one side than it is on the other; lower on the inside. That's when I first noticed it being slick. I applied my brakes and my truck slid some on me, but I got it straightened back up from there and I came on down the hill and just before the accident happened, when this girl applied her brakes and her tail light come on, well I applied my brakes again and then I went to jack knifing to the right."
He further testified that when he first discovered the road was slick he was distant from the scene of the accident some 500 to 600 feet. Actually, we think, he was at least 800 feet away from the point where the Mercury and the truck collided. Prior to the trial of the case in response to an interrogatory addressed to him by the attorney for the plaintiff (Interrogatory No. 18) Ford made this statement:
"Let me answer this way. I topped a rise and estimated the Mercury was about 100 feet ahead of me. I then saw head lights of two cars on the right side of the highway, which were about 100 to 150 yards away. * * * when I saw these lights, I immediately applied my brakes but my trailer tried to jack-knife. At that time there were no brake lights burning on the rear of the Mercury. I got my trailer straightened out and fell in behind the Mercury again * * *."
Counsel for Winford asserts the testimony of Ford admits he knew that the highway was slippery when he was at least 600 to 810 feet from the point of the accident, traveling at a slow rate of speed which he figured to be 30 miles per hour and consequently he could have stopped his truck in a short distance. From this it is argued the accident occurred because of the negligence of Fred Ford in driving too close to the Mercury automobile and not because of absence of warning signs. Hence, counsel concludes Fred Ford's acts of negligence *600 were the sole and proximate cause of the accident.
The attorney for Ford seeks to answer this contention by pointing out the truck was not loaded and was equipped with good brakes, good tires and good lights, and further, although it was raining he had full control of his vehicle and was traveling at a speed of from 30 to 35 miles per hour, and would have avoided the accident except for the slippery condition of the highway.
In almost every case involving an automobile accident the question of assessing to one party or the other, or both, a proximate cause of the injury must be considered. The rules governing the determination of a proximate cause which has resulted in injury is aptly stated by a leading authority on automobile law.
"The proximate cause of an injury is the primary or moving cause, or that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the accident could not have happened, if the injury be one which might be reasonably anticipated or foreseen as a natural consequence of the wrongful act.
"When negligence is established, liability attaches for all injurious consequences that flow therefrom until diverted by intervention of some efficient cause that makes the injury its own, or until force set in motion by negligent act has so far spent itself as to be too small for law's notice.
"No general rule can be formulated as to when a negligent act is the proximate cause of an injury, as it depends on the peculiar facts of each case. The guiding principle is to determine whether a given act is a material element or a substantial factor in producing the particular result; for, in order to charge a negligent actor with legal responsibility therefor, not only must the negligence in question have been the cause, but it must have been the proximate cause in producing the injury of which complaint is made.
"An action may be defended on the ground that the sole proximate cause of the accident in question was the act of a third party, an unavoidable accident, an extraneous happening, or the like.
"Negligence of a defendant, or of an injured person, will not authorize, or preclude, recovery if it was the remote cause of the injury.
"The remote cause is that cause which is behind the proximate cause, which produces the injury, and those damages which are the result of a remote cause form a part of that large mass of resulting losses styled `damnum absque injuria', for which the law permits no recovery.
"The proximate cause of an injury is not necessarily that which is next or last in time or place, but that which is a procuring, efficient and predominant cause in sense of closeness in causal relation." Cyclopedia of Automobile Law and Practice, Section 2531.
"The proximate cause of an injury is the efficient cause, the one that necessarily sets the other causes in operation, and where a wrongful act puts other forces in operation which are natural and which the act would reasonably and probably put in action, the party who puts in force the first efficient cause will be responsible in damages for the injury proved, though immediately resulting from the other force so put in action."
"In many cases, what seems a remote cause is held a proximate one, because in examining the chain of causation, no other proximate cause appears; apparent intervening causes being found merely conditions or occasions *601 and not efficient causes." Cyclopedia of Automobile Law and Practice, Section 2532.
It is indeed well settled in our law of negligence that unless an act either of commission or omission can be said to be a proximate cause of resulting injury, it does not afford a basis for liability. See Jacobs v. Williams, La.App.1935, 160 So. 861; Richie v. Natchitoches Oil Mill, La. App.1938, 178 So. 752; Austin v. Baker-Lawhon & Ford, Inc., La.App.1939, 188 So. 416; Terrill v. ICT Insurance Company, La.App.1957, 93 So.2d 292.
The application of these legal principles to the issues herein presented, raises two questions: (1) Can the failure of Winford or his agents to give warning of the slick condition of the highway after it commenced raining on the evening of July 31, 1956, be deemed to have been a proximate cause of the accident? and (2) Can the act of Ford in following the Mercury automobile and not maintaining a safe distance between the two vehicles be said to constitute a proximate cause of the collision which occurred?
In our opinion the only negligence which may be chargeable to Winford must be predicated on failure to warn unsuspecting motorists of a dangerous condition existing on the roadway. The evidence conclusively shows Winford conformed to the specifications prescribed in his contract as to the application of the asphalt material to the surface of the highway, and the road was open to the public by direction of the State Highway Department. Therefore, there was no breach of general obligation to the public by Winford unless it was due to failure to give adequate warning to motorists of the road condition. In this respect it is proper to examine the evidence in order to ascertain if Ford did know or should have known of the condition of the road of which he complains.
We think Ford was fully cognizant of the condition of the highway from the time he first applied his brakes and at which time he was more than 600 feet distant from the locus of the accident. He had traversed the road in both directions on his several trips on that very day and he could not have failed to observe a sign at the southern end of the repair work warning travelers toward Homer of fresh oil on the surface of the highway. Nor do we think he could have failed to realize the road was slick when he had made application of his brakes on the first curve, at which time he says his trailer attempted to jackknife. Surely, it was incumbent upon him after this incident to foresee that any sudden stopping movement would likely cause his vehicle to get out of control. Notwithstanding this knowledge of the slippery condition of the roadway he continued to follow too closely behind the Mercury and was unable to cope with the situation which developed when the Mercury began to come to a stop. Ford should have anticipated this action of the Mercury for he had noticed the lights of Walker's car and others from a distance. We do not doubt he could and should have maintained a safe stopping distance from the Mercury. He was a driver of many years experience and certainly should have been able to have maintained proper control over his vehicle over a distance of 500 or 600 feet, under the existing circumstances. The Mercury being carefully driven experienced no difficulty in traveling over the affected portion of the highway. For these reasons we think that the sole and proximate cause of the accident was the act of Ford in driving too closely behind the Mercury with full knowledge of the existing road conditions and in our opinion Winford should be absolved from liability.
The remaining question to be considered is one of quantum. The record substantially proves Abbie Harvey sustained a whiplash injury which caused pain and discomfort to her neck for a considerable period of timeapproximately a year. A great deal of medical testimony was adduced upon the trial of this case, including *602 that of Dr. James F. Gladney, general physician of Homer, Louisiana, Dr. D. F. Overdyke, Jr., orthopedist, Dr. Frederick C. Boykin, neuro-surgeon, and Willis J. Taylor, orthopedist.
Drs. Gladney and Overdyke were called to testify on behalf of plaintiffs and Drs. Boykin and Taylor were summoned at the request of the defendants. A careful study of the evidence given by these medical experts indicates that as of the time of the trial plaintiff was still complaining of discomfort from the neck injury. All of the doctors agreed objective symptoms of injury attributable to the accident were absent other than muscle spasm noted by Dr. Gladney. Except for 16 days of hospitalization, some part of which was for "evaluation purposes" plaintiff lost no time from her occupation as a school teacher and we think a fair summary of the medical testimony is that plaintiff sustained a moderately severe whiplash injury of the neck with no fractures or serious complications arising from the trauma.
Plaintiff's case reflects an injury such as we found in the case of Lampkin v. United States Fidelity & Guaranty Company, La.App.1957, 99 So.2d 147 and Paggett v. Travelers Indemnity Company, La. App.1957, 99 So.2d 173. In the Lampkin case plaintiff was confined for some ten days more or less at a hospital, was treated by traction for a considerable time, and was required to wear a neck brace. The conclusion was reached therein by the trial judge that plaintiff's disability would endure for a period of approximately nine months. He awarded the sum of $2,500 for pain and suffering, which item of damage was affirmed by this court as being neither inadequate nor excessive.
In Paggett v. Travelers Indemnity Company Lillie Mae Paggett suffered a whiplash injury to the cervical vertebrae and a painful and partially disabling injury to the left knee. X-rays taken more than six months following the accident disclosed a small chip evulsion of the fifth cervical vertebrae. Medical examinations made more than a year following the accident confirmed this finding and substantiated the continuing pain. The prognosis of the neck injury was that it would continue to cause pain and discomfort for an additional six months. Therein it was also found the injury to the knee was painful and disabling and that it would be necessary for plaintiff to undergo an operation for the repair of the knee injury. We held an award in the sum of $3,000 would be a just evaluation of the damages suffered. The awards so made in Lampkin v. United States Fidelity & Guaranty Company and Paggett v. Travelers Indemnity Company should govern the amount of damages to be allowed in this case and it is our opinion the award in favor of Abbie Harvey should be amended by reducing the same to $2,500.
It is ordered, adjudged and decreed the judgment from which appealed in favor of William P. Harvey and his wife, Abbie Harvey, against L. M. Winford and his liability insurer, the Travelers Insurance Company be, and the same is hereby annulled, reversed and set aside and it is now ordered there be judgment in favor of L. M. Winford and Travelers Insurance Company rejecting plaintiffs' demands at plaintiffs' costs.
It is further ordered, adjudged and decreed the judgment in favor of Abbie Harvey and against the defendants, other than L. M. Winford and the Travelers Insurance Company, be and the same is hereby amended by reducing the award in favor of Abbie Harvey from $4,000 to $2,500. The cost of this appeal is equally divided between plaintiffs and defendants, other than L. M. Winford and Travelers Insurance Company. As so amended, the judgment is affirmed in all other respects.
HARDY, J., dissents from that portion of the decree reducing the award in favor of plaintiff, Abbie Harvey.

*603 On Rehearing.
AYRES, Judge.
Defendants, T. B. McDuff, J. E. Godfrey, McDuff & Godfrey, Fred E. Ford, and the Great American Indemnity Company, complained that this court committed error in its failure to hold, inter alia, that the acts of L. M. Winford, road contractor, in creating the hazardous and dangerous situation on the highway and his failure to give adequate and sufficient warning of such situation constituted the proximate cause of the accident involved, and that the court further committed error in its findings that the accident occurred at a point "some six to eight hundred feet" south of the point where Ford, the driver of one of the vehicles involved in the accident, discovered the presence of the unusually hazardous condition on the surface of the highway, whereas, it is contended, Ford did not discover, nor could he have discovered, such condition until he was actually "on it" or within 300 feet of the place of the accident.
Plaintiff, Abbie W. Harvey, contends the award in her favor was inadequate and prays that it be increased. Plaintiff, William P. Harvey, contends that the decree of this court in affirming the award in his favor lacks clarity and prays that the same be clarified.
Inasmuch as the issues were thoroughly considered and discussed in our original opinion, no useful purpose could be served by a further detailed discussion.
Our reconsideration of the record has not served to convince us of any error in our original conclusions on the question of liability of the several defendants. Our study and review of the record has rather reaffirmed our belief in the correctness of the conclusions heretofore reached. If the correctness of the position taken by defendants as to the distances referred to hereinabove be conceded, it would not appear the difference or discrepancy is sufficient to alter the situation or warrant a different conclusion as to the question of liability.
On the question of quantum, the facts are likewise fully detailed and discussed in our former opinion. In awarding plaintiff damages in the sum of $4,000, as well as making a similar award to the plaintiff in the companion case of White v. Great American Indemnity Co., La.App., 110 So.2d 604, with which the present case was consolidated for the purpose of trial, the trial court found that each of these plaintiffs had suffered "a serious whiplash injury to the neck", similar to but more serious than the injury sustained by plaintiff in the case of Lampkin v. United States Fidelity & Guaranty Co., La.App., 99 So.2d 147, "because in the cited case there apparently was no permanent partial disability", whereas there was found in the present record medical testimony tending to establish a permanent disability of the body as a whole of each of the plaintiffs of eight percent to ten percent. Therefore, despite the awards in the Lampkin case and in Paggett v. Travelers Indemnity Co., La.App., 99 So.2d 173, and in view of the awards in Baker v. United States Fire Insurance Co., La.App., 89 So.2d 405, Bartholomaus v. H. G. Hill Stores, Inc., La.App., 97 So.2d 82, and Watts v. Delta Fire & Casualty Co., La.App., 106 So.2d 752, the court has reached the conclusion that the award of the district court is not, and has not been shown to be, manifestly erroneous or excessive.
In the Baker case, an award of $5,600 for whiplash injury to plaintiff's neck was held not excessive where injured person was off from work for about two months, was in hospital in traction for one week, and thereafter used traction at home under the orders of a physician, and, who, according to the physician, suffered a fifteen percent permanent disability.
In the Bartholomaus case, an award of $6,000 to a sixty-two year old female for injuries sustained in an automobile collision, consisting of bruises and contusions, a whiplash injury to the cervical spine, and a sequela of occipital nerve neuralgia, was approved as adequate.
*604 In the more recent case of Watts v. Delta Fire & Casualty Co., supra, an award of $3,500 to a woman who sustained whiplash injuries to the neck, shoulders and back, but which required no hospitalization or loss of time from work, but which did require the use of traction for almost two months, with occasional use of traction thereafter, was approved.
A similar award for similar injuries as sustained by Mrs. Watts was made in the case of Brock v. Southern Farm Bureau Casualty Insurance Co., La.App., 94 So.2d 492.
The injuries sustained in the instant cases are more serious than those sustained by Mrs. Watts or Mrs. Brock, but less serious than those suffered in the Baker and Bartholomaus cases.
For the foregoing reasons, the judgment appealed will be and it is hereby amended, in part, and affirmed, and reversed, in part, and recast to read as follows:
It is, therefore, ordered, adjudged and decreed there be judgment in favor of the plaintiffs, Abbie W. Harvey and William P. Harvey, against the defendants, Great American Indemnity Company, Fred E. Ford, T. B. McDuff, J. E. Godfrey, and the partnership of McDuff & Godfrey, composed of the aforesaid T. B. McDuff and J. E. Godfrey, in solido, for the following sums and amounts, towit:
(a) in favor of plaintiff, Abbie W. Harvey, for $4,000;
(b) in favor of plaintiff, William P. Harvey, for $708.35,
together with five percent per annum interest on each of said amounts from judicial demand until paid;
That the fees of the following doctors who testified on behalf of plaintiffs as expert medical witnesses be and the same are hereby fixed as follows:
(a) Dr. D. F. Overdyke, Jr., $50
(b) Dr. James F. Gladney, $50 and taxed as costs;
That the above named defendants pay all costs, including the cost of the appeal.
That the judgment, so far as in favor of plaintiffs, Abbie W. Harvey and William P. Harvey, and against the defendants, L. M. Winford and the Travelers Insurance Company, be and the same is hereby annulled, avoided, reversed and set aside, and it is now ordered, adjudged and decreed that plaintiffs' demands as to these two defendants be and the same are hereby rejected.
Amended, in part, and affirmed, and reversed, in part.
GLADNEY, J., concurs with the exception that he adheres to his views as expressed in the original opinion on the question of quantum.