Carol BLACK, Paula Black, and Mrs. Jo Swift, Plaintiffs,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

FIRST NATIONAL BANK OF FORT WORTH, TEXAS, Administrator of the Estate of Allan T. Black, Third-Party Defendant.

Civ. A. No. 4–625.

United States District Court
N. D. Texas,
Fort Worth Division.

Sept. 16, 1969.

Supplemental Opinion Oct. 21, 1969.

Joseph D. Jamail, Houston, Tex., for plaintiffs.

Eldon B. Mahon, U. S. Atty., Dallas, Tex., Gerald Mayo, Atty., Dept. of Justice, Washington, D. C., for defendant and third-party plaintiff.

John B. McClane, Fort Worth, Tex., for third-party defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, District Judge.

This action was brought against the United States under the Federal Tort Claims Act for the wrongful death of Dr. Thomas Black and his wife, Jane Black, who were passengers on a Cessna 182 aircraft which crashed near Mabank, Texas, on May 9, 1965, at about 4:48 P.M. The aircraft, Registration No. N 4841D, was piloted by Allan Black, son of decedents. Allan Black held a commercial pilot's license, but did not have his instrument rating. This suit is brought by Carol and Paula Black, daughters of Dr. and Mrs. Black, and by Mrs. Jo Swift, mother of Mrs. Black.

The United States filed a third party complaint against the Estate of Allan Black, which estate in turn filed a cross-claim against the United States.

It appears from the evidence that the plane (sometimes referred to as 41D) left on its ill-fated flight from Baton Rouge, Louisiana, at approximately 2:00 P.M. on Sunday, May 9, 1965, under Visual Flight Rules conditions (VFR). It was bound for Russell Field, Fort Worth, Texas, which was the home field of the aircraft, and Fort Worth was the home of decedents. Prior to leaving Baton Rouge, Allan Black had not filed a flight plan and the government proved that the Weather Bureau Airport Station at Baton Rouge maintained "Daily Pilot Weather Briefing Log" and that such log failed to show that a pilot named Allan Thomas Black or a plane identified as Cessna 182A, N 4841D was given a weather briefing on May 9, 1965. At about 3:00 P.M. the aircraft was in the vicinity of Alexandria, Louisiana, and Pilot Black contacted the Flight Service Station maintained by the Federal Aviation Agency (now Federal Aviation Administration) and requested the current altimeter setting and the winds at five thousand feet. He was given this infor-

mation by Specialist Truman Stanley who was on duty at the time at the Alexandria Flight Service Station. Specialist Stanley gave him no other information. (The tape recording of the conversation between the Flight Service Station and Allan Black was lost, destroyed or missing so that it was not available at the trial of this case.) The specialist at the Alexandria station did not inquire of Pilot Black his destination nor his course, nor did the specialist advise him of significant weather within 150 miles of Alexandria. At this time the Alexandria service station was in possession of the Area Weather Forecast Sigmet (significant meteorology) Charlie 2 [1] and Aviation Severe Weather Forecast which called for scattered thunderstorms over northern and western Louisiana, becoming numerous with some severe thunderstorms at Longview, Texas, which is 135 nautical miles northwest of Alexandria and continuing from there to an area 60 miles either side of a line from 40 miles southwest of San Angelo, Texas, to 60 miles north of Fort Worth, Texas. 41D's course to Fort Worth, Texas would have taken him into the area affected by this weather.

One of the regulations governing radio contact with aircraft and pertinent to furthering weather information to pilots of aircraft in communication with a particular flight service station is Part 439 of the Federal Aviation Agency Flight Assistance Service Handbook, which reads in part as follows:

"439.2 Whenever a SIGMET or Advisory to Light Aircraft exists which involves an area within 150 miles of the station, request the pilot's route and destination. Transmit the weather advisory if it is relevant."

■ Witness Charlie Sides resided near the site of the crash and testified that around 5:00 o'clock in the afternoon on May 9, 1965, he was in his barn milking and heard a plane circling around over the barn; that the clouds were too low for him to see the plane; that it rained 2 inches within 20 minutes at the time he heard the aircraft; that Mr. Bill Green's barn and some trees were blown over at the time he heard the plane, and that he would estimate the winds at 35 miles an hour with gusts at 50 miles per hour. He said further that he heard a thud, at which time the noise of the plane's engine ceased. At this time, visibility, according to this witness, was about 300 yards. The next morning he was in his pasture and found the wrecked plane and three dead persons. I find that the primary cause of the crash of 41D was a thunderstorm in progress at the time and place in question.

■ The failure of the Service Station attendant at Alexandria to inquire of Pilot Black his route and destination and to advise him of the severe weather which he would encounter on his course to Fort Worth, Texas was negligence. Part 439 of the Federal Aviation Agency Flight Assistance Service Handbook defines correct procedures for the Service Station Specialist and this procedure was not complied with. As was said in Ingham v. Eastern Air Lines, Inc., 373 F.2d 227 (2nd Cir. 1967):

"It is now well established that when the government undertakes to perform services, which in the absence of specific legislation would not be required, it will, nevertheless, be liable if these activities are performed negligently."

See also Hartz v. United States, 387 F.2d 870 (5th Cir. 1968); Neff, Administratrix v. United States, 282 F.Supp. 910 (D.C.1968). The negligence of the Flight Service Station Specialist was a proximate cause of the crash and the re-

1. Sigmet Charlie 2 issued by the Weather Bureau Forecast Center at Fort Worth at 1:10 P.M. reads:
"SIGMET Charlie 2. In Oklahoma and north Texas at 1300 in the area from Tulsa to 20 miles southwest Hobart to 50 miles southeast Abilene to Longview, Texas, to Ardmore, Oklahoma, back to Tulsa, Oklahoma, numerous thunderstorms forming occasional lines. Some of thunderstorms severe and are moving northeastward about 25 knots and continuing beyond 1700."

sulting damages. The very purpose of the Flight Service Station Rules and Regulations was safety. Because of the existence of such rules and regulations pilots in radio contact with a flight service station would be entitled to rely upon the fact that "significant weather" information would be conveyed to them by the service station. This appears to be particularly true when, as urged by the Government in this case, Pilot Black had not secured a weather briefing prior to his departure from Baton Rouge. The failure to warn of the severe thunderstorms which would be encountered on a flight from Alexandria to Fort Worth, Texas was "that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, and without which the accident would not have happened", and also was "one which might be reasonably anticipated or foreseen as a natural consequence of the wrongful act." Such failure was a material element and a substantial factor in producing the crash.

The parties in this case had agreed that the law of Louisiana controlled in this case. We quote from Harvey v. Great American Indemnity Company, 110 So. 2d 595, 600 (Louisiana):

" 'The proximate cause of an injury is the primary or moving cause, or that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the accident could not have happened, if the injury be one which might be reasonably anticipated or foreseen as a natural consequence of the wrongful act.

\* \* \* \* \* \*

" '\* \* \* The guiding principle is to determine whether a given act is a material element or a substantial factor in producing the particular result; \* \* \*

\* \* \* \* \* \*

" 'The proximate cause of an injury is not necessarily that which is next or last in time or place, but that which is a procuring, efficient and predominant cause in sense of closeness in causal relation.' \* \* \* "

Also, in Home Gas & Fuel Co., Inc., et al. v. Mississippi Tank Co., Inc., et al., 246 La. 625, 166 So.2d 252, 256, the Supreme Court of Louisiana said:

"We think it sufficiant to say in answer to this latter contention that when the negligence of the defendant greatly multiplies the chances of harm to plaintiff, and is of a character naturally leading to its occurrence, 'the mere possibility that it might have happened without the negligence is not sufficient to break the chain of cause and effect between the negligence and the injury.' \* \* \* "

I cannot find the negligence of Pilot Allan Black, as urged by the Government, was the sole proximate cause of the crash of 41D.

■■ It does appear that Pilot Black was also guilty of negligence on the occasion in question. He held a commercial pilot's license but, as above stated, did not have his instrument rating. He was in the process of training and study for the securing of such rating. It appears from the testimony of the experts who testified that the weather conditions described in Sigmet Charlie 2 were clearly visible. Clouds out of which thunderstorms develop are easily recognizable. It is possible of course for a pilot to fly into clouds which do not contain thunderstorms, but Pilot Black's license did not authorize him to fly into clouds. Federal Air Regulations 14 C.F.R. § 61.3 provides in part:

"(f) Instrument rating. No person may act as pilot in command of a civil aircraft under instrument flight rules or in weather conditions less than the minimums prescribed for VFR flight unless—

\* \* \* \* \* \*

(3) In the case of an aircraft other than a helicopter or airship, he holds an instrument rating or an airline transport pilot certificate.

Section 61.83

An applicant for a private pilot certificate must pass a written test on—

\* \* \* \* \* \*

(c) Recognizing dangerous weather conditions and evaluating weather reports; \* \* \* "

Such regulations also prescribe Visual Flight Rules as follows:

(a) Distance from clouds. Except as provided in Sec. 91.107, no person may operate an aircraft under VFR—

\* \* \* \* \* \*

(2) Within any other controlled airspace at a distance less than 500 feet below or 1,000 feet above, and 2,000 feet horizontally from, any cloud formation;

\* \* \* \* \* \*

(4) Outside controlled airspace at an altitude of more than 1,200 feet above the surface, at a distance less than 500 feet below or 1,000 feet above, and 2,000 feet horizontally from, any cloud formation; or

(5) Outside controlled airspace at an altitude of 1,200 feet or less above the surface, unless the aircraft is clear of clouds.

(b) Flight visibility. Except as provided in Sec. 91.107, no person may operate an aircraft under VFR—

\* \* \* \* \* \*

(2) In any other controlled airspace unless flight visibility is at least three statute miles; or

INSTRUMENT FLIGHT RULES

91.115 ATC clearance and flight plan required.

No person may operate an aircraft in controlled airspace under IFR unless—

(a) He has filed an IFR flight plan; and

(b) He has received an appropriate ATC clearance."

Allan Black was not only trained but also obligated to see, observe and recognize the weather conditions into which he flew and his failure to avoid such weather conditions constitutes negligence. Under the standards above set forth, I find that such negligence was also a proximate cause of the crash of 41D.

■■ At the time of the death of her parents, Carol Black was twenty-one (21) years of age and attending university. Paula Black was nineteen (19) years of age and was also a university student. Mrs. Jo Swift, mother of Mrs. Jane Black, was a widow, seventy-eight (78) years of age. She and the two daughters resided with Dr. and Mrs. Black at 2600 Ryan Place Drive in Fort Worth, Texas. Dr. Black was fifty-two years of age and his wife was fifty years of age. Dr. Black was a pediatrician with substantial earnings. The care, counsel, advice, and the education which the parents were providing their daughters were surely of substantial value. Under the law of Louisiana, plaintiffs are entitled to recover for grief, bereavement, loss of comfort and society. It appears that plaintiff, Mrs. Jo Swift, was living with her daughter and son-in-law and at least to some extent was dependent upon them.

I find the plaintiff, CAROL BLACK, should recover the sum of Fifty Thousand Dollars ($50,000.00) for the loss of her mother and Fifty Thousand Dollars ($50,000.00) for the loss of her father; that the plaintiff, PAULA BLACK, should recover Fifty Thousand Dollars ($50,000.00) for the loss of her mother and Fifty Thousand Dollars ($50,000.00) for the loss of her father. I further find that plaintiff, MRS. JO SWIFT, should recover the sum of Fifty Thousand Dollars ($50,000.00) for the loss of her daughter, Mrs. Jane Black. It having been determined that Allan Black was negligent on the occasion in question, which negligence was a proximate cause of the accident, Government will have judgment over against the Estate of Allan Black for all sums adjudged against the Government and the Estate of Allan Black is denied recovery on its cross-claim against the Government.

This Memorandum Opinion shall constitute the Court's Findings of Fact and

Conclusions of Law and counsel for Plaintiffs, Carol and Paula Black and Mrs. Jo Swift, shall supply an appropriate order within ten days.

## SUPPLEMENTAL MEMORANDUM OPINION

 In the Memorandum Opinion filed on September 16, 1969, the Court directed that the Government should have judgment over against the Estate of Allan T. Black for all sums adjudged against the Government. It is the opinion of this Court that the negligence of the Government and the negligence of Pilot Allan Black were contributing causes of the accident. Therefore, the Government is entitled to judgment over against the Estate of Allan T. Black for contribution only and not for indemnity. Judgment entered herein will accordingly be so corrected.