CHEHARDY, Judge.
Plaintiff, Harvey Rollins, filed suit against several defendants, Ford Motor Company, Chevron Chemical Company, Te-soro Petroleum Corporation, Efficient Truck Repair & Painting, Inc., and Crescent Ford Truck Sales, Inc., to recover for burns and other injuries sustained by him while off-loading 1,500 gallons of high test gasoline at Chevron Chemical Company’s plant in Belle Chasse, Louisiana.
During the course of plaintiff’s suit, each defendant was dismissed on motions for summary judgment except Chevron Chemical Company. Chevron answered, denied plaintiff’s allegations and alternatively asserted that plaintiff was guilty of contributory negligence and assumed the risks inherent in the off-loading operation.
The matter was tried and judgment was rendered at the end of plaintiff’s case upon Chevron’s motion for a dismissal. Plaintiff has appealed.
The record shows that on June 17, 1977, plaintiff was employed by Petroleum Distributing Company, Inc., as the driver of a tractor-trailer tank truck. On that date, he made a delivery of 1,500 gallons of high test gasoline to defendant’s Belle Chasse plant. When plaintiff arrived at defendant’s plant, he was required to present identification, evidence of his cargo, and a copy of defend *529 ant’s purchase order. He was then sent to the shift supervisor’s office, where he was directed to the location of an underground storage tank into which his gasoline cargo was to be discharged. Defendant’s shift supervisor directed plaintiff to a parking spot near the underground tank and to wait before discharging his cargo until approval was obtained by another supervisor.
Thereafter, a Chevron supervisor came to the site and verified the amount of fuel delivered by plaintiff. He then inspected the hookups between the tank truck and the underground tank, after which he gave his approval for plaintiff to discharge the fuel.
Plaintiff commenced unloading using a power take-off pump, powered by the engine of the tractor portion of the truck. The Chevron supervisor monitored the discharging process for about 15 minutes, after which he signed delivery tickets and weigh bills, which he instructed plaintiff to present to someone at the gate upon leaving the premises.
Plaintiff testified he monitored the unloading operation from the top of the truck and from ground level. After about half an hour, the first 700 gallons were unloaded and plaintiff began discharging the remaining 800 gallons from a different compartment in the tank trailer. Plaintiff testified he monitored the pumping process from the second compartment for approximately 35 minutes, at which time he entered the cab of the tractor to complete his paperwork.
Plaintiff testified that shortly after entering the cab, he looked up from his work and saw flames in his rearview mirror. He slid to the passenger side, but his escape was blocked by flames. He then slid back across the seat and jumped from the truck through the flames, suffering burns to his upper torso, forearms and face.
The tractor portion of the truck was totally destroyed by the fire, and the tank trailer was burned on its front and bottom. Numerous burn patterns were located on the cement at and near the fill hole of the underground storage tank in the area where the truck was parked.
Plaintiff urges defendant’s strict liability and defendant’s negligence in various respects as the cause of his injuries. In his reasons for judgment, the trial judge concluded plaintiff did not prove any negligence on the part of Chevron Chemical Company. The trial judge made the following succinct statement:
“Plaintiff has failed to prove any negligence on the part of Chevron Chemical Company. On the contrary, the evidence indicates that plaintiff was negligent in failing to use the gravity flow mechanism for the discharge of gasoline from the tank car to the storage tank, and, alternatively, in remaining in the cab of the truck while the gasoline was being pumped by a motor. These actions on the part of the plaintiff were violative of the National Fire Protection Association Regulatory Standards.”
The record amply supports this conclusion.
Plaintiff’s evidence, except for the testimony of a fire origin expert, did not indicate the cause and source of ignition for the fire which caused his injuries. The unloading of the 1,500 gallons of gasoline was, except for a short period of time, unwit-nessed by anyone but plaintiff. Moreover, at the time the fire started, plaintiff by his own admission was in the cab of the tractor with his back to the fire and he could not testify as to its origin. Therefore, plaintiff called George M. Martinsen, Jr., who was qualified as an expert in the field of fire origins. Much of his testimony was based on the Regulatory Standards of the National Fire Protection Association.
In addition to testimony that he was in the cab of the tractor at the time the fire began, plaintiff also stated that ground wires were not affixed to the tank and that the vehicle’s engine was left running because he used a motorized take-off pump to discharge his cargo of gasoline even though the tank could have also been drained of its contents by gravity without the use of the motor-driven pump.
After being confronted with several pamphlets and other publications of the Na *530 tional Fire Protection Association, Mr. Mar-tinsen admitted that the power take-off pump should not have been used in the absence of grounding wires attached to the tank. He also admitted that the truck driven by plaintiff could have been unloaded by gravity flow and that the unloading could have been safely accomplished in this manner without the need for a ground wire.
Martinsen also read Standard 51-20 of the National Fire Protection Association, which provides:
“The driver, operator, or attendant of any tank vehicle shall not remain in the vehicle but shall not leave the vehicle unattended during the loading or unloading process. Delivery hose, when attached to a tank vehicle, shall be considered to be a part of the tank vehicle.”
He admitted that based upon his expertise and familiarity with the Standards, the content of the Standards applied to the delivery of gasoline by the plaintiff in this case. In view of this testimony by plaintiff’s own witness, we uphold the trial judge’s decision that plaintiff was guilty of negligence in the unloading of the gasoline tank truck and that this negligence precludes his recovery.
Plaintiff’s petition contains no reference to the strict liability of Chevron Chemical Company. On the contrary, it merely outlines various aspects of negligence asserted by plaintiff against this defendant. Only later in the case, and on appeal, has plaintiff injected the theory of strict liability under C.C. art. 2317 as set forth by the Supreme Court in Loescher v. Parr, 824 So.2d 441 (La.1975). Plaintiff argues defendant was the custodian of an underground storage tank which had vices in its opening which caused injury to plaintiff and that defendant was the custodian of the parking area, which had an existing vice or defect in the form of a slope which he alleges caused gasoline to flow from the fill hole of the underground tank toward the area where plaintiff’s truck was located, in violation of C.C. art. 2322. Plaintiff further advances the argument defendant is liable on a strict liability theory under C.C. arts. 2317 and 2320 because of improper and inadequate supervision and inspection by a Chevron employee.
We need not decide the issue of defendant’s strict liability because the evidence in the record clearly establishes the existence of one of the defenses to strict liability, namely “victim fault”. See Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980); Sepulvado v. State, Through Dept. of Hwys., 395 So.2d 858 (La.App. 2d Cir.1981); Kirsch v. Kappa Alpha Order, 373 So.2d 775 (La.App. 3d Cir.1979).
The evidence establishes that plaintiff occupied the cab of a vehicle discharging volatile gasoline when he was not obliged to do so and that he used an engine-driven pump to discharge the gasoline without grounding the tank when he could have accomplished the same result with gravity flow techniques. The record does not contain any evidence indicating the tank into which the gasoline was being discharged was a dangerous instrumentality. Nevertheless, assuming for the sake of this decision it was, certainly the actions of plaintiff constituted fault on his part sufficient to bar his recovery even in a strict liability situation.
The tank and its orifice were passive instrumentalities, they did not move, nor were they being used by anyone other than plaintiff. The acts which we have concluded were negligence on the part of plaintiff are more than sufficient to also constitute victim fault for the purposes of strict liability. A similar holding was reached in Wilkinson v. Hartford Acc. & Indem., 400 So.2d 705 (La.App. 3d Cir.1981).
Finally, plaintiff argues the trial judge committed error by granting defendant’s motion for “directed verdict” (judgment of dismissal). C.C.P. art. 1810(B). He argues that when there is some evidence in plaintiff’s favor, a directed verdict is not appropriate and that on motions for directed verdict, a court of appeal must view and interpret the facts in the record from a viewpoint most favorable to the party opposed to the motion. Dupree v. Pechinay Saint Gobain Co., 369 So.2d 1075 (La.App. *531 1st Cir.1979); Grimes v. Stander, 394 So.2d 1332 (La.App. 1st Cir.1981). However, it has been held that, unlike a motion for a directed verdict in a jury trial, C.C.P. art. 1810(B) mandates the trier of fact in a judge trial to evaluate all the evidence and render a decision based upon a preponderance thereof without any special inferences in favor of the opponent to the motion. Sevin v. Shape Spa for Health & Beauty, Inc., 384 So.2d 1011 (La.App. 4th Cir.1980).
Moreover, in the present case, it was clear after plaintiff completed his evidence that even if some evidence might slip in while defendant was presenting its case to establish negligence or strict liability on its part, the actions of the plaintiff by his own admission constituted both contributory negligence and victim fault which would have precluded recovery. Hence, the trial judge did not commit error in granting a judgment of dismissal in defendant’s favor.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.