481 So.2d 145 (1985)
Pauline Bourgeois, Wife of/and Malvin BOURGEOIS
v.
Warren JONES, Rene Jones and Government Employees Insurance Company.
No. 85-CA-314.
Court of Appeal of Louisiana, Fifth Circuit.
November 12, 1985.
Rehearing Denied January 17, 1986.
Writ Denied March 14, 1986.
*147 Wiedemann & Fransen, Allain F. Hardin, New Orleans, for plaintiffs-appellees.
Bernard, Cassisa, Saporito & Elliott, Paul V. Cassisa, Sr., Metairie, for Hartford Acc. & Indem. Co., defendant-appellant.
Berrigan, Danielson, Litchfield, Olsen & Schonekas, Frederick F. Olsen, Jr., New Orleans, for Warren Jones and Rene Jones, defendants-appellees.
Before CHEHARDY, BOWES and GAUDIN, JJ.
CHEHARDY, Judge.
Mr. and Mrs. Malvin Bourgeois instituted this suit for personal injuries received by Mrs. Bourgeois while she was collecting money for the Veterans of Foreign Wars by selling poppies in the middle of the street at the intersection of Avenue D and the Westbank Expressway in Marrero, Louisiana.
Mrs. Bourgeois was struck by an automobile driven by Rene Jones, a minor, and owned by his father, Warren Jones. Jones' automobile liability insurer was Reliance Insurance Company.
Named defendants were Rene and Warren Jones, Reliance Insurance Company and Government Employees Insurance Company (GEICO), plaintiffs' own insurer, under the uninsured/underinsured motorists provision of their policy. After suit was filed plaintiffs settled with GEICO for $10,000 and the suit was dismissed as to that defendant.
At a later date Hartford Accident & Indemnity Company was named a defendant as insurer of the Veterans of Foreign Wars Westwego Post 6793.[1] (The VFW was not sued.) Hartford then filed third-party pleadings against the Joneses and Reliance for indemnity and/or contribution.
Prior to judgment Reliance had deposited $5,000 in the registry of court, the limit of its liability, on behalf of its insureds, Rene and Warren Jones. This amount was withdrawn by plaintiffs upon proper motion.
Following trial on the merits judgment was rendered in favor of plaintiffs for $308,004.63 (reduced by amended judgment to $228,004.63) against the Joneses and Hartford Accident & Indemnity Company to indemnify its insured (the VFW) to the limits of liability of the policy. Defendants were ordered to pay all court costs and interest from date of judicial demand.
Hartford has appealed claiming the trial court erred in finding liability on the part of the VFW and averring that the sole proximate cause of the accident was the negligence or contributory negligence and/or assumption of the risk on the part of Mrs. Bourgeois, and/or negligence of Rene Jones imputed to his father, Warren Jones.
Alternatively, Hartford claims a credit of $10,000 paid by GEICO and the $5,000 paid by Reliance. They also claim the award is excessive and that the trial court erred in granting interest against Hartford from date of judicial demand.
Plaintiffs answered the appeal, asking for an increase in quantum and the Jones defendants answered the appeal alleging plaintiff was contributorily negligent, that the quantum was excessive, and that they were entitled to $5,000 credit against any amount awarded, representing the $5,000 placed in the registry of court on their behalf by Reliance Insurance Company.
The record reflects the following facts:
*148 Mr. Bourgeois is a member of the Westwego VFW, and his wife is a member of the ladies auxiliary. Once a year the group raises money for the post by selling poppies. This activity has been going on for 20 years and the Bourgeois have been volunteers for 15 years.
The group wears VFW vests, posts signs on the neutral ground and in the center of the highway calling attention to the event, and the collectors carry orange buckets to collect contributions.
It is customary for some of the volunteers to stand on the white line in the middle of the road, or on the driver's side of the highway. When the activity first started there were some meetings about how to go about the collection, but the volunteers had been doing it for so long, no pre-collection meetings had been held for several years.
The chairman of the fund drive had warned the workers to be very, very careful, but other than that warning no other instructions were given. The volunteers were given vests, buckets and signs, and had the choice of collecting wherever they pleased.
Mrs. Bourgeois reported for duty on Sunday about 9 a.m. She worked until lunchtime with three other volunteers, took time off for lunch and returned thereafter at about 1 p.m.
She took her position by standing on the white line in the center of the highway near the intersection of Avenue D and the expressway, facing traffic going toward the Greater New Orleans Mississippi River Bridge. She did not walk up and down the center line to collect, but waited until cars stopped for the light and then accepted contributions from those who chose to give. At about 1:30 p.m., she was struck by the automobile driven by Rene Jones.
Mrs. Bourgeois did not see the Jones vehicle until shortly before it hit her, and none of the other volunteers saw the car strike her, although one witness heard a loud noise and turned to see her flying through the air. She had apparently been propelled onto the vehicle, struck the windshield and was knocked off after the impact.
Rene Jones' version of the accident is that he was traveling on the expressway in the right-hand lane proceeding toward New Orleans at a speed of 40 to 45 miles per hour. A few traffic lights before the accident he noted a white Oldsmobile traveling in the same direction in the left lane weaving in and out of traffic. At one point that car crossed over the center line into his lane almost close enough to sideswipe him. The driver of the car was a black man wearing a white suit and hat.
Jones never saw any signs indicating the VFW collection, nor did he see Mrs. Bourgeois prior to the accident. He stopped immediately after the accident and saw Mrs. Bourgeois lying in the street behind his automobile.
The driver of the white car pulled over and stopped in front of defendant vehicle and the driver came back to calm Jones and then went back to where Mrs. Bourgeois was lying. Jones never left his car and waited there until police arrived. He claims to have been wearing a black suit at the time. His windshield was shattered and there was damage to the front of his car.
Jones' testimony about the man in the white hat and suit is confirmed by Emile Herman, a plaintiff witness who testified that after the accident a man of that description who identified himself as a preacher came over to the scene and joined with other witnesses to say a prayer for Mrs. Bourgeois. Herman did not know where the man came from.
In a deposition given 6 months after the accident Jones had said he first saw the victim when he was about 10 yards away from her and she was standing about 3 feet into his lane of traffic.
Mrs. Bourgeois has very little recollection of the accident. She claims to have seen the car which struck her shortly before the accident zigzagging and traveling very fast. She identified the driver as a *149 young colored boy wearing a white hat and white suit. She does not recall being hit.
She said that just before the accident she was standing on the white line in the middle of the road facing traffic. This was a normal position for her in collecting. No one at the VFW told her how to stand in the street or that it was unsafe. Had she been told to move out of the street she would have done so, but as long as she stood on the white line she felt safe and she was very careful to stay on the line.
As a result of the accident Mrs. Bourgeois suffered two broken legs. On one leg the femur was broken and on the other the tibia and fibula. Two surgical procedures were necessary to place a rod in one leg and a plate in the other. She also had a dislocated shoulder which resulted in a 50% disability of her upper left extremity and restriction of motion in her ankle and knee, constituting 25% disability of her leg. Two months after the accident she was doing well except for the shoulder. The doctor said her limp would improve but the shoulder injury would be permanent. She also had multiple lacerations of the face and other parts of her body.
The trial court found Mrs. Bourgeois was injured because Rene Jones, the minor, had a duty to look out for Mrs. Bourgeois a pedestrian, and to avoid hitting her. It held his father strictly liable for the son's negligent conduct. It further found that the Westwego Post of the VFW violated its duty to see that Mrs. Bourgeois sold poppies safely and that she was seriously injured because she was improperly supervised.
It is well settled in our jurisprudence that the first duty of those who operate motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger. Rottman v. Beverly, 183 La. 947, 165 So. 153 (1936).
While Mrs. Bourgeois does not meet the strict definition of a pedestrian[2] because she was not walking across the street, in the street or on the side of the road, but was merely standing in the road, nevertheless we believe, as did the trial court, that the doctrine of Baumgartner is applicable here.
In Baumgartner v. State Farm Mut. Auto. Ins. Co., 356 So.2d 400 (La.1978), our Supreme Court stated that in a motor vehicle/pedestrian accident contributory negligence is not available as a defense. This does not impose absolute liability on the driver of an automobile simply because there was a collision between a car and a person, nor is a motorist liable irrespective of fault on his part. In fact Baumgartner clearly states that a motorist who exercises all reasonable care to protect a pedestrian, who nonetheless suffers injury, is not at fault. (356 So.2d at 408.)
In the instant case it is clear that Rene Jones was grossly negligent. He had a duty to keep a sharp lookout. It was a clear day; there was nothing obstructing his view and he was traveling within the legal rate of speed, yet he failed to see the posted signs about the charity collection, he did not notice the other collectors near the same intersection, or the bright orange collection buckets, but most important, he never even saw Mrs. Bourgeois until she struck his windshield. Such negligence was a proximate cause of this most unfortunate accident, and under Baumgartner we do not address the contributory negligence on the part of Mrs. Bourgeois against this defendant.
As stated in the landmark case of Jackson v. Cook, 189 La. 860, 181 So. 195, 197 (1938):
"[W]hat they can see they must see and in legal contemplation they do see; that their failure to see what they could have seen by the exercise of due diligence, *150 does not absolve them from liability."
Relative to the liability of Hartford, it is plaintiffs' position that the negligence of Hartford's insured, the VFW, consists of establishing a collection activity at a major intersection; establishing traditional, standard and customary locations in the middle of a roadway; providing inadequate clothing (vests) and signs; having no safety meetings to discuss potential hazards; failing to provide flashing police vehicles; and having a chairman who admitted it was dangerous but did nothing to change the procedures.
In support of their allegations plaintiffs rely on the testimony of Joseph H. Andre, their safety expert.
Andre was familiar with the intersection. He stated there is no safe way to stand in the street and collect funds around moving traffic. It is against the law for a person to stand in the roadway to solicit from the occupant of any vehicle. LSA-R.S. 32:218.[3] He did not think the vest worn by the collectors or the signs posted were adequate.
He did not think Mrs. Bourgeois would have realized the danger since she had been doing this for a number of years, and he felt it was the chairman's responsibility to determine a safe manner and safe position for the volunteers to collect.
In explaining why it was unsafe, he said Mrs. Bourgeois was standing near fast-moving traffic, even oversized loads, exposed to truck and motorcycle traffic, drunk and reckless drivers, possibly vehicles trying to leave the scene of a crime, and that she was standing in between traffic at all times. He explained the traffic lanes are 12 feet wide and the standard vehicle is 6 feet long, many are 8 feet long, and generally they are driven within 2 feet of the center lines, cars pass other cars, etc. Andre said it would not make any difference what type of clothing the collectors wore, it would not protect them under any circumstances.
John F. Exnicios, defendants' safety expert, testified the speed limit on the expressway is 45 miles per hour. He visited the site. The white line on which plaintiff was standing was 4 inches wide and 15 feet in length. The lane lines are white "skipped" lane lines in that area. They separate the right and left lanes of traffic approaching the intersection. He said a person cannot stand on a 4-inch line and not extend over the line, because the width of a body of a normal person is at least 12 inches, so if she is standing on a 4-inch line she was also standing in either or both traffic lanes.
In his opinion anyone over 12 years old who exposes himself to moving traffic by standing in the middle of the roadway understands there is a distinct possibility of being struck by one of the vehicles moving past on either side, and that a person who stands there once a year or once a year for 15 years should and does appreciate the fact that his life is dependent upon the skills of someone else, i.e. the motorist. The longer she did this type of collection the more problems she would encounter over the years and the more she should realize that she could be struck. He also concluded that a person who places herself in that position and claims to be unafraid is even more of a hazard because she would take more chances. The fact that a person has no fear of danger does not lessen the danger. A blowout, a flat tire or anything can and does happen on a heavily traveled highway.
Considering all of the evidence we are of the opinion that the negligence of the VFW, if any, could only have been a remote cause of the accident. As such, it is not actionable negligence which would warrant a recovery. Harvey v. Great American Indemnity Company, 110 So.2d 595 (La.App. 2d Cir.1959). Mrs. Bourgeois was 54 years old at the time of the occurrence *151 and she had been collecting for 15 years. Surely after that length of time she should have had no need for safety meetings to discuss potential hazards, nor should she have needed further supervision to see that she sold her poppies safely.
As to this defendant, Mrs. Bourgeois cannot rely on the Baumgartner doctrine, as that applies only to the motorist and the pedestrian. The VFW, Hartford's insured, is neither. Hartford is thus entitled to raise the defenses of contributory negligence and assumption of the risk. These are affirmative defenses. LSA-C. C.P. 1005.
As stated in Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133, 141 (1971): "The determination of whether a plaintiff has assumed a risk is made by subjective inquiry, whereas contributory negligence is determined objectively under the reasonable man standard." See Restatement (Second), Torts, Section 496 (1965); Symposium: Assumption of Risk, 22 La.L.Rev. 1-166; Kaplan v. Missouri Pacific R. Co., 409 So.2d 298 (La.App. 3d Cir.1981).
Contributory negligence is conduct on the part of plaintiff which falls below the standard to which he should conform for his own protection. The standard of conduct to which the plaintiff must conform is that of a reasonable man under like circumstances. Restatement of Torts Second, Section 463, 464 (1965); Dorry v. Lafleur, 399 So.2d 559 (La.1981); Straley v. Calongne Drayage & Storage, Inc., 346 So.2d 171 (La.1977) Langlois v. Allied Chemical Corp., supra; Gordon v. City of New Orleans, 430 So.2d 234 (La.App. 4th Cir.1983); Rollins v. Ford Motor Co., 424 So.2d 527 (La.App. 5th Cir.1982); Poche v. Maryland Cas. Co., 407 So.2d 1237 (La. App. 4th Cir.1981).
Assumption of the risk is properly applicable to those situations where the plaintiff, with knowledge of the peril, voluntarily enters into a relationship with defendant involving danger to himself because of defendant's contemplated conduct. Knowledge is the mainstay of assumption of the risk defense and the court will impute knowledge to a plaintiff not because he was in a position to make certain observations, but only when plaintiff actually made those observations and should reasonably have known that a risk was involved. Prestenbach v. Sentry Insurance Co., 340 So.2d 1331 (La.1977).
Notwithstanding Mrs. Bourgeois' assertion that she did not consider it dangerous to solicit donations from the center of the Westbank Expressway, there are some risks that every man must be held to appreciate. Dorry v. Lafleur, supra.
By way of illustration, the Dorry case refers to Restatement 2d Torts, Section 496, Comment d, which provides:
"There are some risks as to which no adult would be believed if he says that he did not know or understand them. Thus, an adult who knowingly comes in contact with a fire will not be believed if he says that he was unaware of the risk that he might be burned by it; and the same is true of such risks as those of drowning in water or falling from a height, in the absence of any special circumstances which may conceal or appear to minimize the danger. One who ... would be found in fact to understand and appreciate the normal, ordinary risk of those premises...."
We do not believe Mrs. Bourgeois was unaware of the dangers to which she not only exposed herself but also the danger she presented to the motorists legitimately entitled to use the expressway.
We are not only of the opinion that Mrs. Bourgeois assumed the risk, we also conclude her standard of conduct falls below that of a reasonable man. Even if the VFW were negligent, we conclude that it was manifestly erroneous to fail to find Mrs. Bourgeois was contributorily negligent or assumed the risk of the dangerous situation in which she placed herself.
The accident in suit occurred prior to Louisiana's adoption of the comparative fault doctrine and therefore her negligence *152 is a bar to her recovery from this defendant.
Relative to plaintiffs' answer to the appeal, the trial court originally awarded plaintiffs $308,004.63, itemized as follows: Leg injuries, $130,000; shoulder injury, $60,000; facial lacerations, $17,500; mental anguish, pain and suffering, $80,000; and special damages (stipulated medical expenses), $20,504.63.
Thereafter Hartford filed motions for a new trial, or alternatively to amend the judgment. The original judgment had cast the Veterans of Foreign Wars Westwego Post 6793, along with its insurer. As pointed out by the insurer, its insured was never named a defendant herein, hence it was improperly cast in the original judgment.
It was also alleged that inasmuch as an award for each injury was itemized, these sums must have included pain and suffering and therefore the $80,000 awarded for mental anguish, pain and suffering permitted plaintiffs to "double dip."
Following hearing thereon the motion for a new trial was denied, but an amended judgment was rendered deleting the $80,000 award, reducing the judgment to $228,004.63. Plaintiffs are satisfied with the individual awards to compensate Mrs. Bourgeois for the injuries sustained, but they want the $80,000 award reinstated.
The issue was heard and determined by the trial court and we find no manifest error in elimination of the $80,000 award in the amended judgment.
On the Joneses' answer to the appeal, we have determined that Rene Jones' negligence was a proximate cause of the accident, therefore we turn our attention to their alternative claim that the judgment is excessive and that if cast they are entitled to a credit of $5,000 paid by their insurer.
An appellate court will not disturb an award of damages made by the trial court unless there is an abuse of its much discretion. LSA-C.C. art. 1934(3); Reck v. Stevens, 373 So.2d 498 (La.1979).
As stated by our Supreme Court in Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1977):
"We do reemphasize however that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award ... Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence."
Mrs. Bourgeois has serious permanent disabilities which we have discussed earlier in this opinion. The trial court award indicates the judge appreciated the seriousness of those injuries, which is fully supported by the medical evidence. Therefore we cannot say the trial court abused its much discretion in making the award.
We do agree with Jones' contention that they are entitled to a credit of $5,000 paid by their insurer and we will so amend the judgment.
For the reasons assigned the judgment is reversed in part, amended and affirmed in part and recast as follows:
It is ordered, adjudged and decreed that there be judgment in favor of plaintiffs, Mr. and Mrs. Malvin Bourgeois, against Rene and Warren Jones in the sum of $228,004.63, subject to a credit for $5,000 previously paid.
The judgment is reversed as to Hartford Accident and Indemnity Company and it is now ordered that plaintiffs' suit against it is dismissed at plaintiffs' cost. All other costs are to be paid by Rene and Warren Jones, with legal interest from date of judicial demand.
*153 REVERSED IN PART, AMENDED AND AFFIRMED IN PART AND JUDGMENT RECAST.
BOWES, J., concurs with written reasons.
BOWES, Judge, concurring.
I agree with the ultimate conclusions reached by my learned brothers in this case but do not agree with their reasoning in its entirety. Principally, I feel the definition of a pedestrian adopted by the majority is much too narrow.
In my opinion, anyone on foot, on or near a roadway, must be considered a pedestrian no matter if he is standing (as the plaintiff was here), walking, running, or otherwise moving. Were it not for Baumgartner v. State Farm Mutual Auto Insurance Co., 356 So.2d 400 (La.1978), a supreme court decision which I am bound by law to follow, I would be strongly inclined to hold the plaintiff contributorily negligent, or, under present law, comparatively negligent, in regard to the motorist. However, unless and until our supreme court modifies the stand it has taken in Baumgartner, supra, I have no choice.
Accordingly, I respectfully concur.
NOTES
[1] The original petition was filed on May 29, 1980. Hartford was not named a defendant until April 7, 1981.
[2] "A person travelling on foot; a walker, especially on city streets." American Heritage Dictionary of the English Language (1973); "A person who travels on foot: walker: as a: one who walks for pleasure, sport or exercise; hiker; one walking as distinguished from one travelling by car or cycle." Webster's Third International Dictionary, unabridged (1976) A.C. Merriman Co.
[3] "No person shall stand on a roadway for the purpose of soliciting a ride, employment or business from the occupant of any vehicle."