DUFRESNE, Judge.
This appeal arises out of a vehicular collision with a pedestrian. We reverse.
The plaintiffs parents, both individually and on his behalf, sued the driver of the truck, the driver’s insurer, the driver’s employer, and the State of Louisiana. The suit against the State was settled for $1000 and dismissed. After trial, the jury unanimously determined that the plaintiff was 94 percent contributorily negligent and that the defendant-driver was 6 percent negligent. The plaintiff recovered $3041.76 of the $50,969 judgment after reduction for contributory negligence. The trial court granted a directed verdict in favor of the defendant-driver’s employer because there was no proof that the defendant was in the course and scope of his employment at the time of the accident. Both the defendant-driver and his insurer were cast in judgment and suspensively appealed the finding of any liability. The plaintiff and his parents answered the appeal and appealed de-volutively as well, claiming the defendant was more than 6 percent at fault and claiming general damages should have been awarded by the trial court.
On the night in question, some of Charles Pawlowski’s friends had visited his home and invited him to accompany them to Lakeside Mall. His parents would not allow him to go. A friend of Charles’ parents had parked his car in front of their home and left the keys in the car; Charles’ friends stole the car and proceeded to Lakeside Shopping Center. Charles snuck out of the window and walked to I — 10, which was the fastest way to get to Lakeside Mall. He recalled that he was wearing a black waist-length coat, faded blue jeans, and white tennis shoes with white socks. He climbed the fence that ran along the interstate and then stood on the shoulder of I — 10 between the Cleary overpass and the Causeway Boulevard overpass. Interstate 10 at this point consisted of three eastbound lanes and three westbound lanes divided by a wide neutral ground. Charles waited on the shoulder of the eastbound side of I — 10 for an opening in the traffic to appear so that he could run across. When that opening appeared, he began jogging across the interstate.
Leslie Deakle was driving eastbound on I — 10, returning home from a hunting trip in Mississippi. Mr. Deakle had the cruise control on his pickup truck set at slightly less than 55 mph. Going through the Metairie area on I — 10, Mr. Deakle was in the far *1138 left-hand lane. As Charles reached the far left-hand lane on the eastbound lanes of 1-10, he began sprinting to get out of the path of Mr. Deakle’s oncoming truck. However, he was unable to do so and was struck. Just before impact, Deakle swerved to the left and drove his truck into the bushes on the neutral ground in an effort to avoid hitting the plaintiff.
We are called upon to determine two specific questions:
(1) Whether the jury erred in finding defendant Leslie Deakle 6 percent at fault, and
(2) Whether the trial court erred (as a matter of law) in its ruling that the affirmative defense of assumption of the risk was inapplicable.
In exercising our standard of review, we are aided by our statutory law in La.R.S. 32:263(C), which provides, “The use of any Louisiana interstate highway by pedestrians, bicycles, or other non-motorized vehicles is prohibited.” Moreover, we are aided by our jurisprudence in Libertine v. Aetna Ins. Co., 477 So.2d 1286, 1289 (La.App. 3d Cir.1985), wherein the court states, “A trier’s findings as to percentages of fault are factual, and, in the absence of clear or manifest error, must be upheld on appeal,” citing Triangle Trucking Co. v. Alexander, 451 So.2d 638 (La.App. 3d Cir.1984). Therefore, we must look closely at the record to determine whether or not the record establishes that the jury’s finding of 6 percent liability against Deakle is clearly wrong or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).
In Fitch v. Evans, 364 So.2d 1309 (La.App. 2d Cir.1978), writ denied, 367 So.2d 392 (La.1979), the court held that while a negligent motorist may not rely as a defense upon circumstances which establish that the negligent pedestrian may have had the last clear chance to avoid the accident, a motorist who was guilty of no negligence contributing to the pedestrian’s injuries is not required to pay damages to the pedestrian merely because there occurred a motorist-pedestrian collision. In Williams v. State Farm Mutual Automobile Ins. Co., 444 So.2d 1341 (La.App. 2d Cir.1984), writ denied, 448 So.2d 116 (La.1984), the court held that a motorist traveling in his own lane at a reduced speed alongside of, and behind, a bus which had pulled into a bus stop, was not negligent when he struck an adult pedestrian who had hurriedly departed from the bus and ran suddenly in front of the bus and into the motorist’s path. The court reasoned that because the pedestrian suddenly ran into the motorist’s path from a concealed position, it was not possible for the motorist, who was otherwise driving reasonably, to yield to the pedestrian since circumstances confronted the motorist with a sudden emergency and an unavoidable accident, and the motorist was not at fault.
In Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967, 974 (La.1985), the Louisiana Supreme Court set forth guidelines to be applied to the lower courts in apportioning fault. It looked to § 2(b) of the Uniform Comparative Fault Act (as revised in 1979), which states, “In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.” The Supreme Court expanded on this principle and wrote
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
Watson, supra at 974.
The record shows that, although the interstate was lit by streetlights and the *1139 lights of passing motorists on the night in question, the only eye-witness testified that even with all of the available lighting, the plaintiff was extremely difficult to see because of his dark clothing. The eye-witness’ car was traveling approximately 65 mph and was located approximately 50-60 feet behind Deakle’s truck when he saw plaintiff step out onto the highway. At that moment, he estimated that his car was 300 feet away from the plaintiff and Dea-kle’s truck was 240-250 feet away from the plaintiff. The record reflects that he did not realize Charles Pawlowski was a human being until Pawlowski entered his lane of traffic and ran in front of his vehicle.
From our review of the record, we suspect the circumstances suggest that the possibility of encountering a darkly clad pedestrian in medium-heavy nighttime traffic on the interstate of a large metropolis is indeed remote. Deakle did not create an unreasonable risk to the plaintiff by driving under the speed limit on cruise control in medium-heavy traffic, although he had a very full day and could be expected to be somewhat fatigued. The risk the plaintiff created by his conduct, however, was great, both to himself and to approaching motorists who might swerve when confronted with a highly unexpected emergency situation into other lanes of traffic containing vehicles traveling at high rates of speed. Interstate highways are made expressly for reasonably alert motorists to travel at speeds of 45-55 mph. They are not made for darkly clad pedestrians who use to them to take shortcuts at night in medium-heavy traffic. In Beck v. Boh Bros. Const. Co., 467 So.2d 1318, 1321 (La. App. 5th Cir.1985), this Court found that a pedestrian faced with one of two choices, either attempting to cross the neutral ground of the West Bank Expressway, which was under construction, or walking in the street with traffic approaching from behind, exercised reasonable care in attempting to cross the neutral ground and was not contributorily negligent in light of the absence of warning signs or barricades as well as the absence of an alternate route of travel. Here, Pawlowski had an alternate route of travel that would have cost him 15 minutes of his time. He deliberately crossed the barricades to the interstate set up by the Louisiana Department of Transportation and Development. Although the harm to the plaintiff was great in this case, the risk he exposed himself and other motorists to was very, very great and was entirely self-chosen.
One of the purposes of allowing tort victims compensation for their damages is that doing so deters undesirable conduct and satisfies the community’s sense of justice. Allowing this particular plaintiff to recover damages under these facts will not deter undesirable conduct because this defendant was not behaving unreasonably under the circumstances.
Regarding the remaining issue, whether the trial court erred in its ruling that the affirmative defense of assumption of the risk was inapplicable, we find no statutory law or jurisprudence indicating that the affirmative defense of assumption of the risk is inapplicable to pedestrian/motorist accident situations.
In fact, the jurisprudence indicates that the opposite conclusion is more correct. In Bourgeois v. Jones, 481 So.2d 145 (La.App. 5th Cir.1985), writ denied, 484 So.2d 136 (La.1986), the plaintiff sued a charitable organization as well as other parties for injuries she sustained while collecting money for that organization at the intersection of Avenue D and the West Bank Expressway in Marrero, Louisiana. The court states,
We do not believe Mrs. Bourgeois was unaware of the dangers to which she not only exposed herself but also the danger she presented to the motorists legitimately entitled to use the expressway.
We are not only of the opinion that Mrs. Bourgeois assumed the risk, we also conclude her standard of conduct falls below that of a reasonable man. Even if the VFW were negligent, we conclude that it was manifestly erroneous to fail to find Mrs. Bourgeois was contributorily negligent or assumed the risk of the dangerous situation in which she placed herself.
*1140 Id. at 151. The court determined that the plaintiff could not rely on the Baumgart-ner doctrines, which applied only to motorists and pedestrians, and that the charitable organization was thus entitled to raise the defense of contributory negligence and assumption of the risk. That accident occurred before the adoption of comparative negligence in Louisiana. Since that legislative amendment, the Supreme Court ruled in Turner v. New Orleans Pub. Serv., Inc., 476 So.2d 800, 804-05 (La.1985) that “[T]he ‘Baumgartner’ exception is no longer necessary to accomplish all its legitimate purposes, and our sense of justice requires its elimination.... Cases like Baumgartner will henceforth be governed by the comparative fault doctrine of C.C. 2323.” (footnote omitted) This case indicates that the affirmative defense of assumption of the risk is not strictly inapplicable to motorist/pedestrian cases and could possibly apply to a motorist and a pedestrian.
In Lewis v. State, Dep’t of Trans, and Dev., 436 So.2d 1305, 1307 (La.App. 4th Cir.1983), the Fourth Circuit Court of Appeal held that a plaintiff injured when he fell into an open manhole on an interstate highway median “knowingly confronted the risk of being injured by oncoming vehicular traffic, but, he did not confront the risk of falling into an open manhole.” Therefore, we find the trial judge did err, as a matter of law, in its ruling that the affirmative defense of assumption of the risk was inapplicable.
As a practical matter, this Circuit was faced with this same issue in Fritscher v. Chateau Golf and Country Club, 453 So.2d 964 (La.App. 5th Cir.1984), writ denied, 460 So.2d 604 (La.1984). It looked to Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975), La. Const, art. V, §§ 5 and 10 (1974), and Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980) for guidance. The Ragas court states, “Where a finding of fact is interdicted because of some legal error implicit in the fact finding process or when a mistake of law forecloses any finding of fact, and where the record is otherwise complete, the appellate court should, if it can, render judgment on the record.” Id. at 708.
The elements of the affirmative defense of assumption of the risk are as follows: (1) the plaintiff had knowledge of the danger; (2) he understood and appreciated the risk therefrom; and (3) he voluntarily exposed himself to such risk. Fritscher, supra at 967. As with other affirmative defenses, the defendant pleading assumption of the risk bears the burden of proving it. La.C.C.P. art. 1005; Prestenbach v. Sentry Ins. Co., 340 So.2d 1331, 1334 (La.1976), citing McInnis v. Fireman’s Fund Ins. Co., 322 So.2d 155 (La.1975); and Marcotte v. Travelers Ins. Co., 258 La. 989, 249 So.2d 105 (1971).
“Knowledge” is the mainstay of this defense. Prestenbach, supra at 1335. Although the affirmative defense of assumption of the risk has traditionally been judged by a subjective standard, while contributory negligence has traditionally been judged by an objective “reasonable man” standard, in Dorry v. LaFleur, 399 So.2d 559, 563 (La.1981), the Supreme Court states
This is not to say that the plaintiff’s disclaimer of knowledge or appreciation must be taken at face value. This is a fact question. And there are some risks that every man must be held to appreciate, (see Restatement, supra, comment d). There is a plain difference, however, between what one must have known (a finding of actual knowledge) and what one should have known (the imposition of an objective standard of care), (emphasis in the original.)
This Court has applied this standard previously in Bourgeois, supra at 151 where we state, “Notwithstanding Mrs. Bourgeois’ assertion that she did not consider it dangerous to solicit donations from the center of the Westbank Expressway, there are some risks that every man must be held to appreciate.” (citation omitted) We held that in so doing, Mrs. Bourgeois assumed the risk of the dangerous situation in which she placed herself. Id. at 151.
The facts clearly show that Charles Paw-lowski voluntarily exposed himself to the risk of being hit by a car when he attempt *1141 ed to cross 1-10 on foot, at night, in medium-heavy traffic, wearing dark clothes. His knowledge, understanding, and appreciation of the risk are borne out by common sense as well as the record at hand. The plaintiff was almost 16 years old when he was hit by Deakle’s truck; his 16th birthday was part of his two-and-one-half-week hospital stay after the accident.
The elements of the affirmative defense of assumption of the risk were clearly proven by a preponderance of the evidence, and it was error for the trial court to fail to so find.
Other issues have been raised which, we find, have no merit.
For the reasons assigned, the judgment of the trial court is reversed and it is ordered, adjudged, and decreed there be judgment in favor of the defendants, Leslie Deakle and Sentry Insurance A Mutual Company, and against the plaintiff, dismissing his claim with prejudice. All costs of this appeal are to be assessed against the original plaintiff.
REVERSED AND RENDERED.